[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 11, 2010
JOHN P. LEY
ACTING CLERK

_____

No. 08-16010

_____

D.C. Docket No. 07-00361-CR-KD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUDIVIC WHITE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(January 11, 2010)

Before DUBINA, Chief Judge, BIRCH and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

## INTRODUCTION

Ludivic White, Jr., appeals his conviction for possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). For the following reasons, we affirm.

## I.

At around 2:00 a.m. on April 21, 2007, Police Officers Brad Latham and Otha Lee Hargrove received a complaint about loud music coming from a vehicle parked in a high-crime area of Mobile, Alabama. Upon arriving at the scene, the officers saw a vehicle that matched dispatch's description. As Officer Hargrove drove by the vehicle with his windows partially open, he smelled a "strong" odor of marijuana and heard music emanating from the car. The vehicle contained four occupants: two females in the front seat and two males in the back seat.

Latham approached the driver and asked for identification, which she was unable to provide. The officers then questioned the occupants about whether they had been smoking marijuana. The occupants denied possessing or using any drugs. Latham asked the driver to exit the vehicle and requested her name and social security number to perform a background check. Latham then requested that White step out of the car. Shortly thereafter, Hargrove, who was busy performing a background check on the other male passenger, heard Latham say "gun," at which

point he saw Latham remove a black handgun from White's person. The officers arrested White after he failed to produce a permit for the pistol. No drugs were found in the car. Latham filed two police reports detailing the incident, neither of which mentioned the smell of marijuana. Hargrove did not file any written reports.

White was indicted for possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). Before trial, he filed a motion to suppress the firearm found on his person during the search, arguing that the officers had violated his Fourth Amendment rights. Hargrove testified to the facts stated above at the suppression hearing. On the motion to suppress, the court found that he was a credible witness, and it held that the smell of marijuana gave the officers reasonable suspicion to detain and question the passengers and to pat them down for officer safety.

Both officers testified at trial. Hargrove's testimony remained the same. Latham stated that he responded to a loud noise complaint; when he arrived on the scene, a car matching the description in the complaint contained four occupants and only the dome light was on; and the occupants, when questioned, could not produce identification. He stated that he and Hargrove asked all the occupants if there were any weapons or illegal items in the vehicle, to which each responded in the negative. After recognizing White as having "given [him] problems in the past

3

to where [sic] I stopped him before," he "patted him down for weapons . . . for officer safety," which was "standard [department] practice." As he was patting White down, he noticed the gun's magazine protruding from White's pocket. He could not remember whether there had been any music playing in the car, although he testified that if there had been, it was not loud. He stated that his report had not mentioned marijuana, because he had not smelled any.

Marcus Carothers and Tequila Ward Prince, two of the occupants of the car, later testified that they had been smoking marijuana prior to the stop. They stated that they had not been playing loud music, and that they believed that the loud noise complaint had been filed by a disgruntled neighbor. They were unsure whether the smell of marijuana had lingered in the air, but they estimated that they had ceased smoking marijuana between five to twenty minutes before the officers arrived.

To prove the predicate offense, the government offered a certified copy of White's previous misdemeanor conviction for domestic violence, which stated that he was convicted on January 11, 2005, of domestic violence in the third degree, harassment, in violation of Alabama Code §§ 13A-11-8A and 13A-6-132.[1]

---

[1] Under Alabama Code § 13A-6-8A, harassment occurs "if, with intent to harass, annoy, or alarm another person, [he] . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects [him] to physical contact . . . [or] [d]irects abusive or obscene language or makes an

According to his conviction, on June 22, 2003, he tried to choke his then live-in girlfriend. The district court overruled his objection that this conviction did not qualify as a predicate offense under 18 U.S.C. § 922(g)(9).

After the government rested, White moved for a judgment of acquittal and renewed his motion to suppress the gun. The district court denied both motions. The jury found White guilty, and he was sentenced to forty-six months' imprisonment. The trial court also denied his subsequent motion to dismiss based upon District of Columbia v. Heller, __ U.S. __, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). White now appeals pursuant to 28 U.S.C. § 1291.

---

obscene gesture towards another person." Id. A person commits domestic violence in the third degree if he commits the crime of harassment under § 13A-6-8A and "the victim is a current or former spouse, parent, child, any person with whom the defendant has a child in common, a present or former household member, or a person who has or had a dating or engagement relationship with the defendant." § 13A-6-132.

## II.

### A.

**1.**

White first contests the district court's denial of his motion to suppress the gun found during the pat-down search. "Rulings on motions to suppress evidence constitute mixed questions of law and fact." United States v. LeCroy, 441 F.3d 914, 925 (11th Cir. 2006). We accept the district court's findings of fact, including the district court's credibility determinations, unless they are clearly erroneous. United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). We review the application of law to those facts de novo. LeCroy, 441 F.3d at 925. Because the pat-down search to preserve officer safety was not unreasonable given the totality of the circumstances, we affirm the district court's denial of the motion to suppress.

**2.**

"Our analysis [of the legality of the pat-down search] is governed by the principles of Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), under which the police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking." United States v. Williams, 876 F.2d 1521, 1523 (11th Cir.

1989).  To justify a <u>Terry</u> stop, the officers must "have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity."  <u>United States v. Lindsey</u>, 482 F.3d 1285, 1290 (11th Cir. 2007) (quoting <u>United States v. Powell</u>, 222 F.3d 913, 917 (11th Cir. 2000)), <u>cert. denied</u> 128 S. Ct. 438, 169 L. Ed. 2d 305 (2007).  In connection with a <u>Terry</u> stop, an officer may conduct a pat-down search if he has reason to believe that his own safety or the safety of others is at risk.  <u>Terry</u>, 392 U.S. at 27, 88 S. Ct. at 1883.  "The officer need not be <u>absolutely certain</u> that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  <u>Id.</u> (emphasis added).

The district court found that (1) Hargrove was credible, and (2) he smelled marijuana.  We "must accept [these factual findings] unless [they are] so inconsistent or improbable on [their] face that no reasonable factfinder could accept [them]."  <u>Ramirez-Chilel</u>, 289 F.3d at 749.  Also, we must construe the facts in the light most favorable to the party that prevailed below (here, the government). <u>United States v. Nunez</u>, 455 F.3d 1223, 1225 (11th Cir. 2006).  White focuses on the inconsistencies in the officers' testimony—namely, that Hargrove remembered the marijuana smell, while Latham did not recollect it.  However, it is not inconceivable that two busy police officers testifying about an incident that

7

occurred over a year prior remembered the existence of the smell of marijuana differently. It is also not unbelievable that the district court found that Hargrove's testimony about the marijuana smell was credible.

Accepting these findings of fact, we hold that both the brief detention of the vehicle and its occupants and the limited pat-down of White were reasonable. "Reasonable suspicion is determined from the totality of the circumstances, and from the collective knowledge of all the officers involved in the stop." Williams, 876 F.2d at 1524 (citing United States v. Cotton, 721 F.2d 350 (11th Cir. 1983)); see also United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002) (upholding detention when the totality of the circumstances created reasonable suspicion). Given that the smell of marijuana alone may provide a basis for reasonable suspicion for further investigation of possible criminal conduct, the initial stop was valid. Bryan v. Spillman, 217 F. App'x 882, 885 (11th Cir. 2007) (citing United States v. Garcia, 592 F.2d at 259 (5th Cir. 1979) (holding that smell of marijuana emanating from vehicle established reasonable suspicion for search)). Additionally, even without considering Hargrove's testimony regarding marijuana, the totality of the circumstances indicates that the pat-down was reasonable.[2]

---

[2] Thus, we decline to reach the question of whether the smell of marijuana, which Latham failed to articulate but the district court held was present, can be considered in determining the legality of the pat-down search.

8

"[T]he issue is whether a <u>reasonably prudent man</u> in the circumstances would be warranted in the belief that his safety or that of others was in danger." <u>Terry</u>, 392 U.S. at 27, 88 S. Ct. at 1883 (emphasis added). Here, several factors support the objective reasonableness of the search: Latham responded to a loud music complaint in a high-crime area late at night, <u>see</u> <u>United States v. Gordon</u>, 231 F.3d 750, 755-56 (11th Cir. 2000) (noting an area's reputation for criminal activity is a factor that may be considered when determining whether reasonable suspicion exists); the officers were outnumbered two-to-one; none of the occupants could provide identification; and Latham recognized White as someone who had given him trouble in the past. For these reasons, the limited pat-down search of White did not violate the Fourth Amendment, and we affirm the district court's denial of White's motion to suppress the gun.

**B.**

**1.**

White next argues that the district court erroneously denied his motion for a judgment of acquittal based on its conclusion that his previous domestic violence conviction was a predicate offense for purposes of § 922(g)(9). We review de novo a district court's denial of a motion for a judgment of acquittal on sufficiency of evidence grounds. <u>United States v. Yates</u>, 438 F.3d 1307, 1311-12 (11th Cir.

2006) (en banc). We affirm the district court's decision, because White's underlying domestic violence offense is a predicate offense for purposes of § 922(g).

**2.**

Section 922(g)(9) makes it illegal for a person "convicted in any court of a misdemeanor crime of domestic violence" to possess "any firearm or ammunition" that has been in or affects interstate commerce. Section 921(a)(33)(A) defines a "misdemeanor crime of violence" as an offense that "(1) has, as an element, the use [of force],[3] and (2) is committed by a person who has a specified domestic relationship with the victim." United States v. Hayes, __ U.S. __, 129 S.Ct. 1079, 1087, 172 L. Ed. 2d 816 (2009) (alteration in original).

While the government must establish that the underlying offense was committed against a person with a specified domestic relationship beyond a reasonable doubt, § 922(g)(9) does not require the predicate offense to have the specified domestic relationship as an element. Id. at __, 129 S.Ct. at 1082-83. Accord United States v. Chavez, 204 F.3d 1305, 1313-14 (11th Cir. 2000) (holding that while the domestic nature of the relationship must be a fact, it need not be an

---

[3] White does not argue that the Alabama statue does not contain the use of physical force as an element of the offense. Consequently, he has abandoned this argument on appeal. See United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998) ("Because [defendant] has offered no argument on [an] issue on appeal, we find that he has abandoned it.").

element of the prior offense); <u>United States v. Griffith</u>, 455 F.3d 1339, 1346 (11th Cir. 2006) ("Therefore, as we held in <u>Chavez</u>, a domestic relationship must exist as part of the facts giving rise to the prior offense, but it need not be an element of that offense.").

To meet the definition of a "misdemeanor crime of domestic violence," the offense must be committed by (1) "a current or former spouse," (2) "a person with whom the victim shares a child in common," (3) "a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian," or (4) "by a person similarly situated to a spouse, parent, or guardian of the victim." § 921(a)(33)(a)(ii). At trial the government introduced a certified copy of the underlying conviction, which contained identical addresses of both the victim and White. In addition, White was convicted in a "domestic dispute" during which he pushed his girlfriend down and then tried to choke her. Finally, White concedes that a live-in girlfriend would meet the domestic relationship requirement of § 921(a)(33)(a). The victim was in a specified domestic relationship with White: she lived with him, was his "girlfriend," and the dispute was a "domestic" one. Several of our sister circuits have held that a "'live-in' girlfriend qualifies as a domestic relationship for purposes of [§§ 922 and 921(a)(33)(a)]." <u>Buster v. United States</u>, 447 F.3d 1130, 1133 (8th Cir. 2006). <u>See</u> <u>also</u> <u>United States v. Shelton</u>, 325 F.3d

553, 563 (5th Cir. 2003) (holding defendant's admission that he lived with his girlfriend was sufficient to qualify the relationship under §§ 922 and 921(a)(33)(a)); United States v. Denis, 297 F.3d 25, 31 (1st Cir. 2002) (assuming defendant's "'live-in girlfriend'" was similarly situated for purposes of §§ 922 and 921(a)(33)(a)).  Viewing, as we must, the evidence in the light most favorable to the government, United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005), there is sufficient evidence to show that a "domestic relationship . . . exist[ed] as part of the facts giving rise to the prior offense" and that the trier of fact could have so found beyond a reasonable doubt.  Griffith, 455 F.3d at 1346.  Therefore, the district court did not err in determining that White's previous domestic violence conviction was a predicate offense for purposes of § 922(g).

## C.

### 1.

White's last argument on appeal focuses on the constitutionality of § 922(g)(9).  "We review de novo the legal question of whether a statute is constitutional."  United States v. Tinoco, 304 F.3d 1088, 1099 (11th Cir. 2002) (citation omitted).  Under our interpretation of Heller, __ U.S. at __, 128 S. Ct. at 2783, we affirm his conviction.

### 2.

12

Although prior to Heller we upheld the constitutionality of § 922(g)(9), our decision did not rest on Second Amendment grounds. See Hiley v. Barrett, 155 F.3d 1276 (11th Cir. 1998) (affirming the district court's decision upholding § 922(g)(9)'s constitutionality against commerce clause, equal protection, substantive due process, ex post facto, bill of attainder, and Tenth Amendment attacks). Today we limit our holding to deciding whether § 922(g)(9) may be properly included as a presumptively lawful "longstanding prohibition[] on the possession of firearms," a category of prohibitions the Supreme Court has implied survives Second Amendment scrutiny. Heller, __ U.S. __-__, 128 S. Ct. at 2816-17.

The Second Amendment provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Last year, in Heller, the Supreme Court interpreted this language to "guarantee [an] individual right to possess and carry weapons in case of confrontation." __ U.S. __, 128 S. Ct. at 2797. In Heller, the Court held that the District of Columbia's ban on handgun possession in the home by law-abiding citizens violated the Second Amendment. Id. In dictum, the Court qualified the right to bear arms: "[l]ike most rights, [it] is not unlimited." Id. at __, 129 S. Ct. at 2816. "[N]othing in [Heller] should be

13

taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . ." Id. at __-__, 129 S. Ct. at 2816-17. While the Court did not specifically mention § 922(g)(9), it included a footnote to clarify that the enumerated "presumptively lawful regulatory measures [are] only examples; [this] list does not purport to be exhaustive." Id. at __, 129 S. Ct. at 2817 n.26.

We are called upon to decide whether the statutory prohibition against the possession of firearms by persons convicted of the misdemeanor crime of domestic violence, § 922(g)(9), warrants inclusion on Heller's list of presumptively lawful longstanding prohibitions. As the Supreme Court recently noted, § 922(g)(9) was passed in 1996 in response to Congress's concern that "[e]xisting felon-in-possession laws . . . were not keeping firearms out of the hands of domestic abusers, because 'many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies.'" Hayes, __ U.S. at __, 129 S. Ct. at 1087 (quoting 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg)). Section 922(g)(9) was designed to "'close this dangerous loophole.'" Id. By way of example, the federal ban on felons-in-possession in § 922(g)(1)—a statute characterized in the Heller dictum as a presumptively lawful

14

longstanding prohibition—does not distinguish between the violent and non-violent offender. Thus, both an armed robber and tax evader lose their right to bear arms on conviction under § 922(g)(1). In contrast, a person convicted under § 922(g)(9) must have first acted violently toward a family member or domestic partner, a predicate demonstrated by his conviction for a misdemeanor crime of violence. Thus, although passed relatively recently, § 922(g)(9) addresses the thorny problem of domestic violence, a problem Congress recognized was not remedied by "longstanding" felon-in-possession laws. We see no reason to exclude § 922(g)(9) from the list of longstanding prohibitions on which <u>Heller</u> does not cast doubt. <u>See</u> <u>In re United States</u>, 578 F.3d 1195 (10th Cir. 2009) (order) ("Nothing suggests that the <u>Heller</u> dictum, which we must follow, is not inclusive of § 922(g)(9) involving those convicted of misdemeanor domestic <u>violence</u>.").

We now explicitly hold that § 922(g)(9) is a presumptively lawful "longstanding prohibition[] on the possession of firearms." <u>Heller</u>, __ U.S. __-__, 128 S. Ct. at 2816-17. Given that <u>Heller</u> does not cast doubt on the constitutionality of § 922(g)(9), we affirm White's conviction.

AFFIRMED.