Rehearing granted, December 30, 2010

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 09-4084
_____

UNITED STATES OF AMERICA,

　　　　　Plaintiff - Appellee,

　　v.

WILLIAM SAMUEL CHESTER, JR.,

　　　　　Defendant - Appellant.

_____

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (2:08-cr-00105-1)

_____

Argued: December 4, 2009　　　　Decided: February 23, 2010

_____

Before TRAXLER, Chief Judge, and AGEE and DAVIS, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**ARGUED:** Edward Henry Weis, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Elizabeth Dorsey Collery, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Charles T. Miller, United States Attorney, Gerald M. Titus, III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A grand jury sitting in the Southern District of West Virginia indicted William Samuel Chester, Jr., for possession of a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). Chester moved to dismiss the indictment, arguing that application of the federal statute to him violated his Second Amendment right to keep and bear arms as explained in District of Columbia v. Heller, 128 S. Ct. 2783 (2008). The district court denied the motion. Thereafter, Chester pled guilty but reserved his right to appeal the district court's denial of his motion to dismiss the indictment. He now reiterates his Second Amendment challenge to § 922(g)(9).

In the proceedings below, the district court did not address whether Heller required the Government to justify individual laws that restrict Second Amendment rights. Instead, it dismissed Chester's claim in reliance on Heller's much-noted language as to "presumptively lawful" gun regulations—notably, the felon-dispossession laws. J.A. 60-61. Following the pattern of other lower federal courts, it drew an analogy between felons and domestic violence misdemeanants, concluding that the Heller language should be read to include both because the potential violent acts of those found guilty of domestic violence is often

-2-

far greater than that of those who commit non-violent felonies. J.A. 61.

We find that the district court erred when it failed to scrutinize § 922(g)(9) apart from the language in Heller. We agree with the Seventh Circuit decision in United States v. Skoien, 587 F.3d 803, 808 (7th Cir. 2009), insofar as it held that challenges to firearms regulations under the Second Amendment must be individually analyzed because such regulations restrict the exercise of a constitutional entitlement. In this case, the district court neither determined the most appropriate level of scrutiny of § 922(g)(9), nor did it substantively apply that level of scrutiny to an analysis of § 922(g)(9),[1] and therefore, we vacate and remand this case for further proceedings.[2]

---

[1] The district court did conclude, without any analysis, that § 922(g)(9) "survives Second Amendment scrutiny, whether deemed intermediate or strict, both facially and as here applied." J.A. 61. That conclusory language is insufficient particularly as it is not based on an evidentiary ground in the record or any legal analysis for the conclusion.

[2] We note that on September 30, 2009, the Supreme Court granted certiorari in McDonald v. Chicago, a distinct but related Second Amendment case appealed from the Seventh Circuit. National Rifle Ass'n v. Chicago, 567 F.3d 856 (7th Cir. 2009), cert. granted, McDonald v. Chicago, 77 U.S.L.W. 3691 (U.S. Sept. 30, 2009) (No. 08-1521). In McDonald, the issue presented is whether the Second Amendment right to keep and bear arms is incorporated as against the States by the Fourteenth Amendment's Privileges or Immunities or Due Process Clauses. Oral argument is calendared for Tuesday, March 2, 2010.

-3-

On February 4, 2005, Chester was convicted in state court in West Virginia for the misdemeanor crime of domestic battery and domestic assault in violation of W. Va. Code § 61-2-28(a) & (b). J.A. 36-37. In the criminal complaint filed in Kanawha County, West Virginia, an officer stated that he interviewed defendant's then 22 year-old daughter, Meghan Chester, who said that the defendant, her father, "beat her up and assault[ed] her" during an argument over what she had eaten for lunch that day. J.A. 41 (brackets added). Meghan stated that her dad slammed her on the kitchen table and punched her in the face. Id. She then fell to the ground, where her father began kicking her and dumped buckets of water over her head. Id. Meghan escaped and locked herself in the bathroom and her mother eventually took her to the hospital. Id. Megan told police that she thought her father was intoxicated during the argument. Id.

Over two years later, on October 10, 2007, the Kanawha police again responded to a domestic abuse situation at the Chester family home. This time, Mrs. Linda Guerrant-Chester, defendant's then-wife, called. J.A. 48. When the officers arrived, Mrs. Chester told them that she awoke at 5:00 a.m. and discovered defendant outside receiving oral sex from a prostitute. Id. Mrs. Chester said that defendant stated, "[s]o you fucking caught me" and dragged her inside the house.

Chester then grabbed his wife's face and throat, strangling her, and repeatedly shouted "I'm going to kill you!" Id. While the couple's daughter, Samantha Chester, attempted to calm down the defendant, Mrs. Chester called the police. Id. Samantha Chester told the officers that she heard defendant repeatedly threaten to kill Mrs. Chester. Id. During a search of the home, officers located a loaded 12-gauge shotgun in the kitchen pantry and a 9mm pistol in the defendant's bedroom. J.A. 49, 76, 119. Both firearms belonged to the defendant. J.A. 76, 119.

## II.

On May 6, 2008, a federal grand jury returned a one-count indictment which charged Chester with violating 18 U.S.C. § 922 (g)(9) by knowingly possessing two firearms, in and affecting interstate commerce, after having been convicted of a misdemeanor crime of domestic violence. J.A. 6-7. Chester moved to dismiss the indictment. J.A. 8-14. The district court directed the parties to submit briefing in light of the Supreme Court opinion in Heller. J.A. 3. After receiving the briefs, the district court denied Chester's motion. J.A. 58-62.

The district court issued a brief written opinion on October 7, 2008. The court cited Heller's observation that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by

felons and the mentally ill . . . ." J.A. 60 (citing Heller, 128 S. Ct. at 2816-17).  The court then drew an analogy between non-violent felons and domestic violence misdemeanants, finding that the Heller language could, and in this case, should, be read to include both. The court analyzed the issue as follows:

> The thrust of the majority opinion in Heller leaves ample room for the government to control the possession of firearms by misdemeanants found guilty of domestic violence. Indeed, the need to bar possession of firearms by domestic violence misdemeanants in order to protect family members and society in general from potential violent acts of such individuals is quite often far greater than that of the similar prohibition of § 922(g)(1) on those who commit nonviolent felonies.

J.A. 61.

Chester then entered a conditional guilty plea, preserving his right to appeal the district court's denial of his motion to dismiss. J.A. 115-116, 120-123.  The district court imposed a sentence of five months in prison, followed by a three-year term of supervised release.[3] J.A. 125-26. Chester appealed on the grounds that 18 U.S.C. § 922(g)(9) violates the Second Amendment. J.A. 131. This court has jurisdiction of Chester's claim pursuant to 28 U.S.C. § 1291.

---

[3] On February 26, 2009, Chester filed a motion asking the district court to set a date for him to self report and he began serving his term of incarceration.  J.A. 5.

-6-

III.

This case challenges the constitutionality under the Second Amendment of 18 U.S.C. § 922(g)(9), a statute that bans gun possession for individuals previously convicted of a misdemeanor crime of domestic violence.[4] Chester's challenge rests on the Supreme Court's recent decision in District of Columbia v. Heller, where it held unconstitutional two statutes in the District of Columbia that banned the possession of handguns and required that all firearms in the home be kept inoperable. 128 S. Ct. at 2821-22. The issue is therefore whether Heller renders unconstitutional a statutory gun prohibition imposed on a domestic violent misdemeanant convicted for inflicting physical abuse on his daughter.

---

[4] This statute was enacted in 1996 along with 18 U.S.C. § 922(g)(8) as part of the so-called Lautenberg Amendment to the Gun Control Act. See generally United States v. Barnes, 295 F.3d 1354, 1364 (D.C. Cir. 2002); U.S. v. Luedtke, 589 F. Supp. 2d 1018 (E.D. Wis. 2008). The statute states:

> (g) It shall be unlawful for any person—
> . . . .
> (9) who has been convicted in any court of a misdemeanor crime of domestic violence,
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(9).

A.

In Heller, the Court based its holding on a reading of the Second Amendment's main clause, the "operative clause." Id. at 2789 ("The Second Amendment is naturally divided into two parts: its prefatory clause and its operative clause. The former does not limit the latter grammatically but rather announces a purpose."). The Court read the operative clause to "guarantee the individual right to possess and carry weapons in case of confrontation." Id. at 2797. Although not codified in the amendment, the Court found that this right included a right to "self-defense," which it described as "the central component of the right itself." Id. at 2801. It held that the District of Columbia statutes were unconstitutional because they prohibited a class of arms that Americans utilize for the lawful purpose of self-defense, thus prohibiting citizens from using firearms for "the core lawful purpose of self-defense." Id. at 2818.

The Supreme Court carefully circumscribed Second Amendment rights, however, and defined them as "not unlimited." Id. at 2816. It explained that "longstanding prohibitions" derived from various historical restrictions were "presumptively lawful regulatory measures." Id. at 2816-17 & n.26; id. at 2816 ("From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever

-8-

and for whatever purpose."). The Court provided a non-exclusive illustrative list of such presumptively lawful exceptions, including but not limited to "longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]" Id. at 2816-17. Thus, Heller explicitly left some gun restrictions intact.

Although Heller disclaimed any constitutional defect in some gun regulations, it refrained from identifying the proper standard of scrutiny for analyzing whether a statute infringes on Second Amendment rights. Id. at 2821. The Court concluded that the D.C. statute would fail under any "of the standards of scrutiny that we have applied to enumerated constitutional rights." Id. at 2817-18. Notwithstanding this silence, the Court did provide some guidance. It rejected rational basis review, id. at 2817 n.27, and rejected the standard proposed by Justice Breyer in his dissent, an "interest-balancing inquiry."[5] Id. at 2821. The Court also distinguished between different types of

---

[5] Justice Breyer's interest-balancing test inquires "whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." Heller, 128 S. Ct. at 2852 (Breyer, J., dissenting). The majority rejected Justice Breyer's suggestion on the basis that the Second Amendment, like the First Amendment, is the very product "of an interest-balancing by the people[,]" id. at 2821 (majority opinion), and that the Amendment itself "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id.

Second Amendment rights. It identified the most important "core right" of the Second Amendment as the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." Id.

B.

In the wake of Heller, lower federal courts have employed two distinct tacks when faced with constitutional challenges to gun regulations under 18 U.S.C. § 922(g). Many courts have upheld provisions of § 922(g) under the "presumptively lawful regulations" or the "longstanding prohibition" language in Heller. These courts say a particular § 922(g) provision passes muster constitutionally either because Heller specifically stated the particular regulations were constitutional, as regarding felons and the mentally ill, § 922(g)(1) and (4), or via analogy to the so called "presumptively lawful regulations."[6]

---

[6] We have upheld the felony possession provision and the mentally ill possession provision under the Heller language in unpublished cases. U.S. v. Brunson, No. 07-4962, 292 Fed. Appx. 259, *261 (4th Cir. Sept. 11, 2008) (upholding §922(g)(1)); U.S. v. McRobie, No. 08-4632, 2009 WL 82715, *1 (4th Cir. Jan. 14, 2009) (upholding § 922(g)(4)). Many other appellate courts have concluded similarly. E.g., U.S. v. Anderson, 559 F.3d 348, 352 (5th Cir. 2009) (upholding §922(g)(1)); U.S. v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009) (same); U.S. v. Stuckey, No. 08-0291, 317 Fed. Appx. 48, 50 (2nd Cir. March 18, 2009) (same).
Other federal courts have also upheld § 922(g)(9) via analogy to the Heller exceptions for felons and the mentally ill. E.g., United States v. White, -- F.3d --, 2010 WL 59127 at *5 (11th Cir. Jan. 11, 2010), United States v. Booker, 570 F. Supp. 2d 161, 163-64 (D. Me. 2008); U.S. v. Luedtke, 589 F.

-10-

Other federal courts have individually analyzed the specific statutory provision at issue, determined the appropriate level of constitutional scrutiny, and then scrutinized the statute in light of the factual circumstances before the court.[7]

The Seventh Circuit, in a case involving the constitutionality of § 922(g)(9), recently confronted the tension between a court's obligation to scrutinize statutes that infringe on constitutional rights and the presumptively lawful regulations language in Heller. Skoien, 587 F.3d at 808. The court noted "for starters[,]" that the Supreme Court language about presumptively lawful regulatory measures was dicta, and although it did not ignore it, it concluded that "it would be a mistake to uphold this or other gun laws simply by invoking the Court's reference to these 'presumptively lawful regulatory measures,' without more." Id. Additionally, the Seventh Circuit noted that the term "presumptively lawful regulatory measures" lacked clarity. It could include regulations presumed "to fall outside the scope of the Second Amendment right as it was understood at the time of the framing" or it could mean that some regulations "are presumptively lawful under even the

Supp. 2d 1018, 1022-23 (E.D. Wis. 2008); United States v. White, No. 07-00361, 2008 WL 3211298 at *1 (S.D. Ala. Aug. 6, 2008).

[7] E.g., United States v. Miller, 604 F. Supp. 2d 1162, 1171 (W.D. Tenn. 2009); United States v. Engstrum, 609 F. Supp. 2d 1227, 1231-34 (D. Utah 2009).

-11-

highest standard of scrutiny applicable to laws that encumber constitutional rights." Id. Lastly, the Seventh Circuit explained that in Heller, the Supreme Court left ambiguous the contours of the historically justified exceptions, suggesting that some restrictions on firearms will require a case-by-case analysis. Id. (citing Heller, 128 S. Ct. at 2821). For all of these reasons, the Seventh Circuit found that "gun laws-other than those like the categorically invalid one in Heller itself [e.g., total ban on handguns]-must be independently justified." Id.

We agree in part with the Seventh Circuit's approach to this unchartered realm of Second Amendment jurisprudence. Of course, Supreme Court dicta controls when it is on point and it is the only available authority. United States v. Fareed, 296 F.3d 243, 247 (4th Cir. 2002) (applying dicta and stating that the circuit court can be bound by Supreme Court dicta, particularly when the dicta is recent and not enfeebled by later statements). Further, this circuit has applied the Heller dicta to uphold statutes that prohibit gun possession by felons and the mentally ill in unpublished opinions. See supra note 6. But the Heller dicta does not reference the regulation at issue in this case, § 922(g)(9). Cf. United States v. White, -- F.3d --, 2010 WL 59127 at *5 (11th Cir. Jan. 11, 2010). Even read broadly, the dicta from Heller cannot and should not be

-12-

interpreted to control every challenge to every gun regulation. Instead, it seems clear that cases that fall outside the specific exceptions in Heller warrant independent constitutional scrutiny.

In Skoien, the Seventh Circuit proceeded to expound on what it thought to be the proper method of inquiry, fashioning a two-part test. Skoien, 587 F.3d at 808-09. The test started with historical analysis, determining that "some gun laws will be valid because they regulate conduct that falls outside the terms of the right as publicly understood when the Bill of Rights was ratified. If the government can establish this, then the analysis need go no further." Id. For laws without the proper historical pedigree, however, the "law will be valid (or not) depending on the government's ability to satisfy whatever level of means-end scrutiny is held to apply[.]" Id. at 809.

Turning to the facts of its case, the court in Skoien noted that there was neither a record developed, nor argument made, by the Government as to "whether a person convicted of a domestic-violence misdemeanor is categorically excluded from exercising the Second Amendment right as a matter of founding-era history and background legal assumptions." Id. at 810. Further, if it were assumed the Government could not show that firearm possession by domestic violence misdemeanants fell "outside the scope of the Second Amendment right as it was understood at the

-13-

time of the framing," id. at 808, there was neither record nor argument on the issue of what rationale justified § 922(g)(9). Accordingly, the Seventh Circuit remanded the case to the district court for further proceedings. Id. at 816.

We find ourselves similarly situated in the case at bar. The district court did not provide an analysis which reflected the historical undertones of Heller and did not specifically address whether and why § 922(g)(9) might qualify as a "presumptively lawful regulation." Heller, 128 S. Ct. at 2817 n.26. And further, as in Skoien, if we assume possession of a firearm by a misdemeanant falls within the scope of the Second Amendment right, there is no record, argument or analysis in the district court as to why § 922(g)(9) meets "whatever level of means end scrutiny is held to apply." Skoien, 587 F.3d at 809. We have no record as to the particular basis Chester uses to ground his claim to the Second Amendment, much less an analysis from the district court as to how or why that claim merits a particular level of constitutional scrutiny. Without such a basic underpinning in the record, we are left with the prospect of issuing an advisory opinion which is not within our province to do. See Michael v. Cockerell, 161 F.2d 163, 164 (4th Cir. 1947).

As did the Seventh Circuit in Skoien, we must remand this case for the creation of a record, one that includes argument

-14-

and judicial analysis, which we, as an appellate court, can meaningfully review. In that regard, upon remand, the district court must conduct an analysis of the constitutional validity of § 922(g)(9) which is "independently justified." The district court should consider and interpret the historical analysis from Heller, although it is not bound by the threshold test articulated in Skoien. It should also identify, justify, and apply an appropriate level of constitutional scrutiny.

In Skoien, the Seventh Circuit observed "[l]aws that restrict the right to bear arms are subject to meaningful review, but unless they severely burden the core Second Amendment right of armed defense, strict scrutiny is unwarranted." Id. at 812. There, the court selected intermediate scrutiny because the core right was reserved as a right for "law-abiding, responsible citizens" to use arms for their "natural right of armed defense." Id. at 812. Under the facts of Skoien, the defendant's claim was "several steps removed from the core constitutional right" because he was not "law-abiding," and he used his gun for hunting, not for self-defense. Id.

In the case at bar, it is clear that Chester was not "law-abiding," and is therefore at least one step "removed from the core constitutional right." See id. But his reason for possessing his gun, and therefore, which right or rights

-15-

specifically applied to him, were not clarified in the record. Chester identified in his trial pleadings at least three bases upon which he contends the Second Amendment may override a statute like § 922(g)(9), militia service, self-defense, and hunting, but failed to identify which ground, if any, he claims applies to him. These aspects of Second Amendment activity were simply not addressed by the Government or the district court, much less by evidence of record. Without a more ample record, we are left to speculate. On remand, Chester must identify the basis of <u>his</u> claim to Second Amendment protection and make a record to support it; to which the Government may respond. Then the district court can rule based on a full and complete record as to what level of scrutiny applies, thereby creating a sufficient record to permit appellate review.

IV.

For the reasons stated, the judgment is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

<u>VACATED AND REMANDED</u>