[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15292
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 6, 2011
JOHN LEY
CLERK

D. C. Docket No. 09-00035-CR-2-IPJ-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEX NATHAN MITCHELL,
a.k.a. Alex Nathion Mitchell,
a.k.a. Alex Nathen Mitchell,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 6, 2011)

Before TJOFLAT, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Alex Mitchell appeals his conviction and 235-month sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). After a careful review of the record, we affirm.

Mitchell was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Mitchell moved to suppress the evidence obtained when Officer Gilbert Turner searched him during an alleged improper seizure. According to Turner's testimony at the suppression hearing, while on patrol, Turner spotted Mitchell and another man coming out of a known drug house. When the men saw Turner, Mitchell walked to a gas station across the street and his companion ran back into the drug house. Turner followed Mitchell to conduct a field interview. As Turner asked Mitchell for identification, Mitchell began swearing at him. Mitchell's hand was in his jacket pocket and Turner became concerned he had a weapon. Mitchell refused to remove his hand from his jacket and began to walk away. As Turner approached Mitchell with his weapon drawn, Mitchell dropped a gun from his jacket.

After the court denied the motion to suppress, Mitchell proceeded to trial. In addition to Turner's testimony, the government presented the testimony of Officer John Sanders, who assisted Turner with Mitchell's arrest, Detective Cortice Mills, who interviewed Mitchell after his arrest, and ATF agent Eric Hoxter, who

2

examined the gun. Mitchell did not call any witnesses. The jury found Mitchell guilty.

The probation officer calculated Mitchell's guideline range as 235 to 293 months' imprisonment based in part on Mitchell's status as an armed career criminal under 18 U.S.C. § 924(e) (the ACCA). The probation officer listed the predicate offenses as aggravated assault by threat, resisting an officer with violence, and third-degree robbery. The probation officer further noted Mitchell's background including his numerous other convictions, his mental disorders, multiple traumatic injuries, prior drug use, and his up-bringing in foster care.

Mitchell disputed that his prior offenses qualified him as a career offender under the ACCA and requested a downward departure or variance. At sentencing, the court concluded that Mitchell's conviction for resisting arrest with violence qualified as a predicate offense under the ACCA. The court considered Mitchell's home life, his prior record, and his mental status but found no basis to depart from the advisory guideline range. The court noted that Mitchell had a history of violent conduct and the purpose of § 922(g) was to keep violent felons from "walk[ing] around with guns." The court sentenced Mitchell to 235 months' imprisonment.

On appeal, Mitchell argues that (1) the district court improperly denied his motion to suppress the gun he was arrested for carrying; (2) he was improperly

3

categorized as an armed career criminal under 18 U.S.C. § 924(e); and (3) his sentence was unreasonable. We address each issue in turn.

I.

We review a district court's denial of a motion to suppress as a mixed question of law and fact. *United States v. Boyce*, 351 F.3d 1102, 1105 (11th Cir. 2003). The district court's findings of fact are reviewed under the clearly erroneous standard, and its application of the law to those facts is reviewed *de novo*. *Id.* We will construe all facts in the light most favorable to the party who prevailed below. *Id.* In reviewing a motion to suppress, we may consider any evidence presented at trial. *United States v. Newsome*, 475 F.3d 1221, 1224, 1226 (11th Cir. 2007).

For the purposes of Fourth Amendment analysis, there are three broad categories of police-citizen encounters: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006). A consensual encounter does not implicate Fourth Amendment scrutiny. *Id.* An investigatory stop involves reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave. *Id.* In order to justify such a stop, the government must show a reasonable, articulable suspicion

4

that the person has committed or is about to commit a crime. *Id.* When the totality of the circumstances indicate that an encounter has become too intrusive to be classified as a brief seizure, the encounter is an arrest requiring probable cause. *Id.*

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). Even when a police officer has no basis for suspecting an individual, he may pose questions and ask for identification, provided he does not induce cooperation by coercive means. *Id.* at 201. If a reasonable person would feel free to terminate the encounter, then he or she has not been seized. *Id.* Factors relevant to this inquiry include, among other things: whether the police officer blocked the individual's path, the display of weapons, whether identification is retained, the individual's age and intelligence, the number of police officers present, any physical touching of the suspect, and the language and tone of voice of the police. *Perez*, 443 F.3d at 778. A Fourth Amendment "seizure" occurs "only when, by means of physical force or a show of authority, a person's freedom of movement is restrained." *Id.* (quotation and alteration omitted).

An officer may conduct an "investigatory stop" and briefly detain an

5

individual upon a reasonable suspicion that he is involved in criminal activity, even though probable cause may be lacking. *United States v. White*, 593 F.3d 1199, 1202 (11th Cir. 2010) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Reasonable suspicion is determined from the totality of the circumstances. *Id.* at 1203.

Here, the district court properly denied Mitchell's motion to suppress. Turner's initial encounter with Mitchell did not implicate the Fourth Amendment. Turner approached Mitchell in a public place and told him that he was conducting a "field interview." He explained what a "field interview" was: a request for identifying information so that he could run a criminal check. Turner was alone, he did not physically touch or detain Mitchell, he did not have his weapon drawn when he initially requested Mitchell's identification, and he spoke to Mitchell in a "basically calm" fashion. Contrary to Mitchell's argument, Turner needed no basis to approach Mitchell and ask for identifying information. *Drayton*, 536 U.S. at 201; *Perez*, 443 F.3d at 778 ("[T]he mere fact that a law enforcement officer approaches an individual and so identifies himself, without more, does not result in a seizure . . . . Moreover . . . the simple act of police questioning does not constitute a seizure.") (quotation and citation omitted).

To the extent, however, that the encounter progressed into a seizure, it was an investigatory stop for which Turner had reasonable suspicion. When Turner

first saw them, Mitchell and his companion were leaving a house Turner knew to be associated with narcotics. Although an area's reputation for criminal activity, standing alone, cannot support a reasonable suspicion of criminal activity, it is a factor that may be considered when determining if a reasonable suspicion exists. *United States v. Gordon*, 231 F.3d 750, 755-56 (11th Cir. 2000). When Turner turned his emergency lights on and Mitchell and his companion noticed him, the companion ran back into the house, and Mitchell attempted to evade Turner by quickly entering a gas station. Evasive behavior is a "pertinent factor," and unprovoked flight may serve as the basis for a reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Once inside the store, Mitchell responded with profanity to Turner's request for identification. Mitchell had his hand inside the breast pocket of his jacket and he refused to remove it, which made Turner nervous for his safety. An officer may conduct an investigative stop if a reasonably prudent person in the same circumstances would be warranted in the belief that his safety was in danger. *White*, 593 F.3d at 1202-03. Considering the totality of the circumstances, Turner had a reasonable suspicion that Mitchell was engaged in criminal activity and that his own safety was in danger.

II.

7

Finally, Mitchell argues that he did not qualify as an armed career criminal because his prior conviction for resisting an officer with violence under Florida Statute § 843.01 is not a violent felony.

We review *de novo* a district court's determination that a particular conviction qualifies as a "violent felony" under the ACCA. *United States v. Canty*, 570 F.3d 1251, 1254 (11th Cir. 2009).

The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

To determine whether a prior felony conviction falls within ACCA's residual clause, we interpret the crime of conviction using a categorical approach, "read[ing] the face of the relevant statute itself to discern the crime as it is ordinarily committed." *United States v. Harris*, 608 F.3d 1222, 1227 (11th Cir. 2010) (quotations, citation marks, and original alterations omitted). We ask whether the crime is "similar in kind and in degree to the enumerated crimes" listed in subsection (B)(ii), namely, burglary, arson, and extortion. *Id.* (citation

8

omitted). To that end, we ask whether the conduct inherent in the commission of the crime is "purposeful, violent and aggressive," *Begay v. United States*, 553 U.S. 137, 146 (2008), "or, whether it is a more passive crime of inaction, such as the failure to report to a penal institution or driving under the influence of alcohol," *Harris*, 608 F.3d at 1227 (citation omitted).

Under Florida law, "[w]hoever knowingly and willfully resists, obstructs, or opposes any officer . . . in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree." Fla. Stat. § 843.01. This offense falls squarely within ACCA's residual clause.

In this kind of case, we rely on "our own common-sense analysis of whether this conduct poses a serious potential risk of physical injury." *United States v. Alexander*, 609 F.3d 1250, 1257 (11th Cir. 2010). We have no difficulty concluding that "[t]he act of resisting arrest poses a threat of direct confrontation between a police officer and the subject of the arrest, creating the potential for serious physical injury to the officer and others." *United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003).

In addition, the plain language of the statute reveals that the Florida crime of resisting arrest with violence is "purposeful, violent, and aggressive." *Begay*, 553

9

U.S. at 145. Commission of the crime requires, by its own terms, that the defendant have knowingly and willfully resisted, obstructed, or opposed an officer by offering or doing violence to the person of that officer. Fla. Stat. § 843.01. This crime shares with the other crimes enumerated in subsection (B)(ii) the element of purposeful violence and aggression. Accordingly, we conclude that Mitchell's prior conviction for resisting an officer with violence is a violent felony under § 924(e).

III.

We review a district court's sentence for reasonableness. *Gall v. United States*, 552 U.S. 38, 46 (2007). We determine if the sentence is reasonable under an abuse-of-discretion standard. *Id.* Reasonableness review includes both procedural and substantive components. *Id.* Once we determine that a sentence is procedurally reasonable, we consider the substantive reasonableness of the sentence under a "totality-of-the-circumstances" analysis. *Id.* Our reasonableness review is deferential, and the party challenging the sentence "bears the burden of establishing that the sentence is unreasonable in the light of both the record and the factors in section 3553(a)." *United States v. Thomas*, 446 F.3d 1348, 1351 (11th Cir. 2006) (citing *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

A sentence may be procedurally unreasonable if the sentencing court fails to

10

accurately calculate the advisory guideline range, treats the Sentencing Guidelines as mandatory, fails to consider the factors set forth in 18 U.S.C. § 3553(a), or fails to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51. The district court need not discuss or explicitly state each factor on the record, and an acknowledgment that it has considered the defendant's arguments and the § 3553(a) factors is sufficient. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008), *cert. denied*, 129 S.Ct. 2848 (2009).

A sentence is substantively unreasonable "if it does not achieve the purposes of sentencing stated in § 3553(a)." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation omitted). The analysis involves "examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." *Gonzalez*, 550 F.3d at 1324. The § 3553(a) factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

*Talley*, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)). We may vacate a sentence if we are left "with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Pugh*, 515 F.3d at 1191 (quotation omitted).

We conclude that Mitchell's sentence is procedurally reasonable. The district court heard each of the parties' arguments and considered Mitchell's sentencing memorandum but found no reason to depart from the advisory Guidelines. The court considered Mitchell's mental health condition and his history of violent conduct, and noted that the armed career criminal enhancement was designed to keep violent offenders from obtaining weapons. The district court's statements demonstrate that it "ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *United States v. Flores*, 572 F.3d 1254, 1270-71 (11th Cir.) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)), *cert. denied*, 130 S.Ct. 568 (2009).

Mitchell also argues that his sentence was substantively unreasonable, but this argument is unavailing. The weight to be accorded to any § 3553(a) factor is a matter committed to "the sound discretion" of the sentencing court, and we will not

substitute our own judgment in weighing the relevant factors. *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009). The district court considered Mitchell's criminal history, and it noted his mental illness and the challenges in his upbringing. Consequently, it sentenced him to the lowest imprisonment term within the Guidelines range. Mitchell has not shown that the district court committed a clear error of judgment when weighing those considerations. *See Pugh*, 515 F.3d at 1191.

For the foregoing reasons, we affirm Mitchell's conviction and sentence.

**AFFIRMED.**