[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14632
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cr-14069-DLG-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEQUAY ROBERTS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 17, 2021)

Before JORDAN, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

DeQuay Roberts appeals the District Court's denial of his motion to

suppress illegally seized evidence, arguing that the detectives did not have

reasonable, particularized suspicion to single him out for an investigatory stop. We disagree and therefore affirm the District Court's judgment.

## I.

## A.

On July 11, 2018, at approximately 7:00 p.m., four detectives in the Fort Pierce Police Department assigned to the Crime Suppression Unit—Cunzo, Incorvaia, Cena, and Davis—arrived at Parkland Court, a public housing complex, for what they called a "park and walk."[1] The detectives exited their vehicle and walked toward a small group of men with the intent of striking up a conversation. As the detectives approached, they noticed a strong smell of marijuana emanating from the group of four to five individuals.[2]

Detectives Incorvaia and Cena approached Roberts, who was standing next to the trunk of a parked car, while Detectives Cunzo and Davis spoke with other members of the group. Either Incorvaia or Cena asked Roberts if he had any contraband on him, to which Roberts replied "no." Roberts then voluntarily turned out his pants pockets to show the detectives that they were empty.

---

[1] According to Detective Cunzo, when engaging in a "park and walk," police "walk around, say Hi, [and] see what's going on" in an effort to provide a positive police presence in the community.

[2] Detective Cunzo testified that there were five to eight men standing in the group, but video of the incident reveals only four to five, and Roberts later stipulated to this fact in support of a guilty plea.

At this point, Detective Incorvaia noticed the outline of a hard object in Roberts's pocket, which was weighing down his nylon windbreaker. Believing that the object was a gun, Detective Incorvaia reached out and touched the outside of Roberts's jacket pocket. Doing so confirmed Incorvaia's suspicion. Detective Incorvaia then notified his fellow officers of the presence of a firearm by yelling "gun."

Roberts immediately attempted to flee but was tackled by the detectives. It took all four of them to restrain Roberts, who continued to resist arrest even after being placed in a patrol vehicle. Detective Cunzo ultimately secured the loaded gun, which fell out of Roberts's pocket in the struggle.

## B.

On October 25, 2018, a grand jury indicted Roberts for one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Roberts promptly filed a motion to suppress, arguing that the detectives lacked both probable cause and/or reasonable suspicion to detain him or search his person. According to Roberts, the "[p]olice had no articulable, particularized, and objectively reasonable belief that [he] was committing a crime or was a danger to them."

The Government, on the other hand, argued that the encounter was consensual, or in the alternative, that the detectives possessed a reasonable

suspicion that Roberts was engaged in criminal activity based on the strong odor of marijuana coming from the small group in which he was standing. The Government further argued that Detective Incorvaia had reason to believe his safety was at risk when he saw what he believed to be the outline of a firearm in Roberts's jacket pocket.

On February 1, 2019, a Magistrate Judge held an evidentiary hearing, comprised of testimony by Detective Cunzo, Detective Incorvaia, and Chantis Roberts, the defendant's father. After hearing from the witnesses, she issued a Report and Recommendation (R&R), recommending that the District Court deny Roberts's motion to suppress.

In the R&R, the Magistrate Judge concluded that Roberts had been seized for the purposes of the Fourth Amendment, as a reasonable person would not have felt free to leave, but that police possessed reasonable suspicion to detain him under *Terry*.[3] In doing so, she rejected Roberts's argument that the suspicion was not sufficiently particularized. The Magistrate Judge then concluded that Detective Incorvaia had reason to frisk Roberts after he saw what he believed to be the outline of a gun in Roberts's jacket pocket, and therefore, the gun yielded from the pat down was lawfully recovered. Both Roberts and the Government filed timely objections to the R&R.

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).

4

On April 22, 2019, the District Court adopted wholesale the Magistrate Judge's R&R, thereby denying Roberts's motion to suppress. The parties thereafter entered into a plea agreement under which Roberts retained his right to appeal the denial of his motion to suppress. The District Court accepted Roberts's plea, and on October 28, 2019, imposed a 30-month sentence of imprisonment to be followed by two years' supervised release.

In this appeal, Roberts argues that his mere presence in a group which smelled of marijuana was insufficient to establish reasonable suspicion or probable cause. He acknowledges that the smell of marijuana can, in some circumstances, establish probable cause or reasonable suspicion to search a specific area or person. But he argues that the probable cause or reasonable suspicion must be individualized, and the detectives had no reason to suspect that he, in particular, had committed a crime.

Because we have held that the smell of marijuana alone may create a reasonable suspicion of criminal wrongdoing, *see United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010), and because the group was sufficiently small, the detectives were justified in detaining Roberts. Accordingly, the District Court properly denied Roberts's motion to dismiss.[4]

---

[4] As we note in part III.B, Roberts abandoned his claim that the frisk itself was improper by failing to argue this point in his initial brief on appeal.

5

II.

Because rulings on motions to suppress present mixed questions of law and fact, we review the District Court's factual findings for clear error and its application of the law to the facts *de novo*. *United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th Cir. 2012). The facts are construed in favor of the party that prevailed below, and we afford substantial deference to the factfinder's explicit and implicit credibility determinations. *Id.* at 1303.

III.

We begin, in part III.A, by addressing Roberts's argument that the detectives lacked a reasonable, particularized suspicion to single him out for an investigatory stop. Then, in part III.B, we briefly dispose of Roberts's assertion that Detective Incorvaia had no reason to frisk him.

A.

Under *Terry*, law enforcement officers may seize an individual for a brief, investigatory stop if they have a reasonable suspicion that the individual was involved, or is about to involved in, criminal activity. *United States v. Acosta*, 363 F.3d 1141, 1144–45 (11th Cir. 2004). While "reasonable suspicion" is a lower standard than probable cause, it still requires at least an objective justification. *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675–76 (2000). Police must "be able to point to specific and articulable facts which, taken together with

6

rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. An "inchoate and unparticularized suspicion or 'hunch'" is insufficient. *Id.* at 27, 88 S. Ct. at 1883.

Whether reasonable suspicion exists is based on the totality of the circumstances. *See United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989). But the smell of marijuana alone can provide reasonable suspicion for an investigatory stop. *White*, 593 F.3d at 1203. What's more, we have held that the odor of marijuana can establish the existence of probable cause. *See United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) ("At the point marijuana was smelled by [the officer], probable cause to believe a crime had been committed . . . arose"); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana.").

In this case, the District Court—via adoption of the R&R—found that the detectives credibly testified that they smelled marijuana as they approached the group. "[W]e must accept [this factual finding] unless it is . . . so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). And there is nothing in the record here which would suggest the District Court clearly erred in

7

concluding that the detectives smelled marijuana when approaching the group. *See Lewis*, 674 F.3d at1302–03. So, accepting this fact as true, we find that the detectives possessed reasonable suspicion of criminal activity.

The question now becomes whether that suspicion was sufficiently particularized. Rather than disputing whether the odor of marijuana can provide police with reasonable suspicion, Roberts argues that even if the detectives smelled marijuana, the odor was emanating from the group as a whole and not him specifically; the smell could have been coming from anyone.

In support of his argument, Roberts cites *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338 (1979). In that case, the police patted down nine to thirteen bar patrons for weapons, frisked Ybarra twice, and then during Ybarra's second frisk, found a cigarette pack that contained heroin. *Id.* at 88–89, 100 S. Ct. at 341. The Supreme Court determined that the police had a warrant authorizing them to search the tavern and bartender for illegal drug dealing, but the warrant did not authorize the police to search individual bar patrons in the absence of reasonable suspicion that they were armed and dangerous. *See id.* at 90–93, 100 S. Ct. at 341–43. Ultimately, Ybarra's mere presence at the bar was insufficient to give the police reasonable suspicion to frisk him. *Id*. at 91, 100 S. Ct. 342.

Roberts's particularity argument fails to convince us. While it is true that a person's "mere propinquity to others independently suspected of criminal activity

does not, without more, give rise to probable cause to search that person," *id.*, that is not the case here. Roberts's situation is distinguishable from that in *Ybarra*. He was not merely present in a location where the police suspected that someone else—the bartender in *Ybarra* for example—was engaged in criminal activity. Rather, the detectives suspected that Roberts himself, and the others in the group, were engaged in a crime. As the Magistrate Judge noted, a closer analogy would be if the detectives had stopped and frisked every person in Parkland Court simply because they were standing outside.

Moreover, the District Court found that there were only four to five people in Roberts's immediate area, a factual finding that is borne out by video evidence. Perhaps Roberts's claim—that the detectives did not have a sufficiently particularized suspicion that he was engaged in criminal activity—would have merit if Roberts had been standing in a larger group. But it strains credulity to say that the detectives, who smelled marijuana coming from a group of only four or five individuals, could not briefly detain those individuals simply because they could not point to any particular person with certainty and say the smell emanated from them. Consequently, the detectives' suspicion was sufficiently particularized, and Roberts's detention was proper under *Terry*.

9

B.

Generally speaking, law enforcement may frisk a suspect, in connection with a *Terry* stop, if they have reason to believe that their safety or that of others in the surrounding area is at risk. *White*, 593 F.3d at 1202. This Court need not analyze whether Detective Incorvaia had cause to frisk Roberts, however, because Roberts abandoned the issue on appeal by failing to develop an argument for it in his initial brief. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam).

IV.

In conclusion, because the odor of marijuana gave the detectives a reasonable, particularized suspicion to detain each individual in the group, including Roberts, and Roberts failed to challenge the frisk on appeal, we find that the District Court did not err in denying his motion to suppress.

**AFFIRMED.**