PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

───────────

No. 09-2211

───────────

UNITED STATES OF AMERICA

v.

JAMES FRANCIS BARTON, JR.,

Appellant

───────────

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 07-cr-00376)
District Judge:  Honorable Alan N. Bloch

───────────

Submitted Under Third Circuit LAR 34.1(a)
October 21, 2010

Before: HARDIMAN, GREENAWAY, JR. and NYGAARD,
*Circuit Judges.*

(Filed: March 4, 2011)

Robert L. Eberhardt
Charles A. Eberle
Laura S. Irwin
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219-0000
        *Attorneys for Appellee*

David B. Chontos
Chontos & Chontos
561 Beulah Road
Turtle Creek, PA 15145-0000
        *Attorneys for Appellant*

————————

OPINION OF THE COURT

————————

HARDIMAN, *Circuit Judge*.

James Barton pleaded guilty to two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). In doing so, he reserved the right to argue on appeal that these convictions violate his Second Amendment right to keep and bear arms. Because we hold that 18 U.S.C. § 922(g)(1) is constitutional both on its face and as applied to Barton, we will affirm.

I

On April 20, 2007, a confidential police informant paid Barton $300 for an Iver Johnson 32-caliber revolver loaded with five rounds of ammunition and a box containing 44 rounds of ammunition. The serial number on the firearm had been drilled out, rendering it indecipherable. Based on the information provided by the confidential informant, the police obtained a warrant to search Barton's residence. The search uncovered seven pistols, five rifles, three shotguns, and various types of ammunition.

Barton was indicted on two counts of violating 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm and ammunition.[1] It is undisputed that Barton had prior felony convictions for possession of cocaine with intent to distribute and for receipt of a stolen firearm. Barton moved to dismiss the indictment, arguing that 18 U.S.C. § 922(g)(1) violated his fundamental right to "use arms in defense of hearth and home," recognized by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), as the "core" principle embodied in the Second Amendment. *Id.* at 630.

The District Court denied Barton's motion to dismiss, relying on the Supreme Court's statement in *Heller* that certain "longstanding" statutes restricting the Second Amendment right to bear arms, such as those prohibiting gun possession by felons,

---

[1] 18 U.S.C. § 922(g)(1) states, in relevant part: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

are "presumptively lawful." *See id.* at 626-27 n.26. Finding that such dispossession statutes cannot be both "presumptively lawful" *and* facially unconstitutional, the District Court refused to read *Heller* to invalidate this prohibition.

Following the District Court's denial of his motion to dismiss, Barton entered conditional guilty pleas to both charges. The District Court sentenced Barton to 51 months in prison, followed by three years of supervised release. Barton filed this timely appeal.

II

The District Court had jurisdiction over Barton's indictment and sentence pursuant to 18 U.S.C. § 3231. We have jurisdiction over the appeal under 28 U.S.C. § 1291, and exercise plenary review over Barton's constitutional challenge. *United States v. Fullmer*, 584 F.3d 132, 151 (3d Cir. 2009).

A

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *Heller*, the Supreme Court held that the Second Amendment confers an individual the right to keep and bear arms that is not conditioned on service in a militia. 554 U.S. at 595. At the "core" of the Second Amendment is the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635 (holding that a District of Columbia ordinance, which created an "absolute prohibition of handguns held and used for self-defense in the home," could not withstand any level of "scrutiny that [the Court] has applied to enumerated Constitutional rights"). *See also McDonald v. City of Chicago*, 130 S. Ct. 3020, 3042 (2010) ("right to keep and

4

bear arms [is] among those fundamental rights necessary to our system of ordered liberty").

Although the individual right to keep and bear arms is fundamental, it is "not unlimited," *id.* at 676, and certain "longstanding prohibitions on the possession of firearms" are "presumptively lawful," *id.* at 626-27 n.26. These include: "prohibitions on the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, [and] laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. As reaffirmed by the Supreme Court in *McDonald v. City of Chicago*, this list of "presumptively lawful" regulations reflects the historical understanding "from Blackstone through the 19th-century cases . . . that the [right protected in the Second Amendment] was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. Accordingly, *Heller*'s list of permissible regulations "does not purport to be exhaustive." *Id.* at 627 n.26.

Barton argues that the Supreme Court's discussion of the presumptive lawfulness of felon gun dispossession statutes is mere dicta, as it "could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *McDonald v. Master Fin. Inc.*, 205 F.3d 606, 612 (3d Cir. 2000) (quoting *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986)). This argument is not without force, as three of our sister courts of appeals have characterized the "presumptively lawful" language in *Heller* as dicta. *See United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (Tymkovich, J.,

concurring); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). Even so, these courts relied on the *Heller* "dicta" to reaffirm the constitutionality of § 922(g)(1). *See Skoien*, 614 F.3d at 639; *Scroggins*, 599 F.3d at 451; *McCane*, 573 F.3d at 1047. Moreover, two circuit courts of appeals have recognized that "[t]o the extent that this portion of *Heller* limits the Court's opinion to possession of firearms by law-abiding and qualified individuals, it is not dicta." *United States v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010); *see also United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) ("Courts often limit the scope of their holdings, and such limitations are integral to those holdings.").

We agree with the Second and Ninth Circuits that *Heller*'s list of "presumptively lawful" regulations is not dicta. As we understand *Heller*, its instruction to the District of Columbia to "permit [Heller] to register his handgun [and to] issue him a license to carry it in the home," was not unconditional. *See Heller*, 554 U.S. at 647. Rather, it was made expressly contingent upon a determination that Heller was not "disqualified from the exercise of Second Amendment rights." *Id*. The District of Columbia could comply with the Supreme Court's holding either: (1) by finding that Heller was "disqualified from the exercise of Second Amendment rights" under a "presumptively lawful" regulation (such as a felon dispossession statute); or (2) by registering Heller's handgun and allowing him to keep it operable in his home. *Id.* Accordingly, the Supreme Court's discussion in *Heller* of the categorical exceptions to the Second Amendment was not abstract and hypothetical; it was outcome-determinative. As

6

such, we are bound by it. *See Connecticut v. Doehr*, 501 U.S. 1, 30 (1991).[2]

B

To prevail on his facial challenge, Barton must "establish[] that no set of circumstances exists under which . . . [§ 922(g)(1)] would be valid, *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal citations and quotations marks omitted).[3] The

---

[2] Barton cites two opinions—an unpublished Fourth Circuit opinion and a vacated Seventh Circuit opinion—for the proposition that courts may not rely exclusively on *Heller*'s list of "presumptively lawful" regulations to justify categorical exclusions to the Second Amendment. *See United States v. Chester*, 367 F. App'x 392, 399 (4th Cir. 2010); *United States v. Skoien*, 587 F.3d 803 (7th Cir. 2009), *rev'd en banc*, 614 F.3d 638 (2010). Barton's reliance on these cases is misplaced. The statute at issue in *Chester* and *Skoein*—a prohibition on gun possession by misdemeanor domestic violence offenders—was not included in *Heller*'s list of permissible regulations. *See Chester*, 367 F. App'x at 393; *Skoien*, 587 F.3d at 804. Not surprisingly, therefore, these courts were forced to look beyond the language in *Heller* to find that domestic violence offenders were not protected by the Second Amendment. Here, no such inquiry is necessary, because § 922(g)(1) is one of *Heller*'s enumerated exceptions.

[3] Because we do not recognize an "overbreadth" doctrine outside the limited context of the First Amendment, *Schall v. Martin*, 467 U.S. 253, 268 n.18 (1984), Barton cannot raise a successful facial challenge to § 922(g)(1) by simply

Supreme Court has twice stated that felon gun dispossession statutes are "presumptively lawful." *See Heller*, 554 U.S. at 626-27 n.26; *McDonald*, 130 S. Ct. at 3047. A "lawful" prohibition regulates conduct "fall[ing outside] the scope of the Second Amendment's guarantee." *See United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010) (finding this interpretation a "better reading, based on the text and structure of *Heller*," than one that would require "lawful" regulations to satisfy every level of constitutional scrutiny).[4]

In sum, because *Heller* requires that we "presume," under most circumstances, that felon dispossession statutes regulate conduct which is unprotected by the Second Amendment, Barton's facial challenge must fail. *Accord Rozier*, 598 F.3d at 770-71; *Vongxay*, 594 F.3d at 1114-18; *McCane*, 573 F.3d at 1047; *United States v. Anderson*, 559

showing that the statute operates unconstitutionally under some sets of circumstances.

[4] In *Marzzarella*, we faced a "novel" regulation—namely, a ban on the possession of a firearm with a "removed, obliterated, or altered" serial number. 614 F.3d at 93. Unlike the "presumptively lawful" prohibitions listed in *Heller*, 18 U.S.C. § 922(k) was neither "derived from historical regulations," *id.*, nor addressed conduct "with a heightened capability to cause damage," *id.* at 95. Accordingly, we could not determine with certainty whether the act of owning an unmarked weapon fell within or outside the Second Amendment's protections. *Id.* We nevertheless upheld the constitutionality of the statute, finding, under the second step of *Heller*'s two-part inquiry, that 18 U.S.C. § 922(k) satisfies both intermediate and strict scrutiny. *Id.* at 101.

F.3d 348, 352 & n.6 (5th Cir.), *cert. denied*, 129 S. Ct. 2814 (2009).

C

Having rejected Barton's facial challenge, we turn to his claim that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him. As the Government concedes, *Heller*'s statement regarding the presumptive validity of felon gun dispossession statutes does not foreclose Barton's as-applied challenge. By describing the felon disarmament ban as "presumptively" lawful, *Heller*, 554 U.S. at 626-27 n.26, the Supreme Court implied that the presumption may be rebutted.

*Heller* does not catalogue the facts we must consider when reviewing a felon's as-applied challenge. Rather, the Supreme Court has noted that it will "expound upon the historical justifications for exceptions [it] mentioned if and when those exceptions come before [it]." *Id.* at 635. Thus, to evaluate Barton's as-applied challenge, we look to the historical pedigree of 18 U.S.C. § 922(g) to determine whether the traditional justifications underlying the statute support a finding of permanent disability in this case.

The first federal statute disqualifying felons from possessing firearms was enacted in 1938. Federal Firearms Act (FFA), ch. 850, § 1(6), 52 Stat. 1250, 1251 (1938). In enacting the statute, "Congress sought to rule broadly -- to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Scarborough v. United States*, 431 U.S. 563, 572 (1977) (internal citations and quotation marks omitted).

Although 18 U.S.C. § 922(g) was meant to "keep firearms out of the hands of presumptively 'risky people,'"

9

*United States v. Bass*, 404 U.S. 336, 345 (1971), Congress did not bar *non*-violent felons from possessing guns until 1961. *See* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961). For nearly a quarter century, § 922(g)(1) had a "narrower basis for a disability, limited to those convicted of a 'crime of violence.'" Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 HARV. J. L. & PUB. POL'Y 695, 698 (2009). "Crimes of violence" were commonly understood to include only those offenses "ordinarily committed with the aid of firearms." *Id*. at 702. Prior to 1923, at least seven state legislatures had adopted bans on the carrying of concealed weapons by violent offenders. *Id*. at 702, 707-09 (citing HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS AND PROCEEDINGS OF THE THIRTY-FIFTH ANNUAL MEETING 862-63 (1925)); *see also State v. Hogan*, 58 N.E. 572, 574-75 (Ohio 1900) (holding that a state law banning "tramps," or roaming beggars, from carrying firearms protected "every honest man, woman and child" from the threat of theft, robbery, and murder).

Debates from the Pennsylvania, Massachusetts and New Hampshire ratifying conventions, which were considered "highly influential" by the Supreme Court in *Heller*, 554 U.S. at 604, also confirm that the common law right to keep and bear arms did not extend to those who were likely to commit violent offenses. For instance, when Anti-Federalist delegates at the Pennsylvania ratifying convention proposed in December 1787 that the Constitution include a right to keep and bear arms, they excluded from this right those who had committed crimes and those who posed a "real . . . danger of public injury." BERNARD SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 665 (1971). And as Samuel Adams urged at the Massachusetts ratifying convention, the Second Amendment should "be never construed . . . to prevent the people of the United States who are

*peaceable* citizens, from keeping their own arms." *Id.* at 674-75 (emphasis added); *see also id.* at 674-75 (describing a proposal at the New Hampshire ratifying convention, which would have ensured that Congress "never disarm any Citizen unless such as are or have been in Actual Rebellion"); Robert E. Shallope, *The Armed Citizen in the Early Republic*, 49 LAW & CONTEMP. PROBS. 125, 130 (1986) (citing Seventeenth Century English sources for the proposition that arms should only be placed in the hands of those interested in preserving the "publick Peace").

To raise a successful as-applied challenge, Barton must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society. The North Carolina Supreme Court did just that in *Britt v. State*, 681 S.E.2d 320 (N.C. 2009), finding that a felon convicted in 1979 of one count of possession of a controlled substance with intent to distribute had a constitutional right to keep and bear arms, at least as that right is understood under the North Carolina Constitution. *Id.* at 323.

Unlike the defendant in *Britt*, Barton fails to develop the factual basis for his as-applied challenge. Barton does not argue that his predicate offenses make him no more likely than the typical citizen to commit a crime of violence, nor could he have done so persuasively in light of the facts of his case. Courts have held in a number of contexts that offenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime. *See, e.g.*, *United States v. Dean*, 59 F.3d 1479,

11

1490 (5th Cir. 1995) ("We have observed repeatedly that firearms are the tools of the trade of those involved in illegal drug activity."); *United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992) ("The Commission promulgated U.S.S.G. § 2K2.1(b)(2) on the premise that 'stolen firearms are used disproportionately in the commission of crimes.'") (citing U.S.S.G. § 2K2.1(b)(2), commentary). Moreover, the record indicates that Barton has not been rehabilitated, as he recently admitted to selling a firearm with an obliterated serial number to a confidential police informant. Because Barton has failed to demonstrate that his circumstances place him outside the intended scope of § 922(g)(1), we find no error in the District Court's dismissal of his as-applied challenge.

As a fallback position, Barton maintains that even if his prior offenses place him in a category of offenders society has decided should "not be trusted to possess a firearm," *Scarborough*, 431 U.S. at 572, the government may not strip him of his fundamental right to use a weapon for the purpose of defending "hearth and home." In support of this argument, Barton cites the Supreme Court's statement in *Heller* that the right to use a weapon in self-defense is at the "core" of one's right to keep and bear arms. 554 U.S. at 570. Barton contends that § 922(g)(1), like the ordinance struck down in *Heller*, is unconstitutional to the extent that it restricts his fundamental right to keep a weapon in his home for self-defense. *See id.*

Barton's argument regarding defense of his home is foreclosed by our decision in *Marzzarella*. There, we recognized that a "felon arguably possesses just as strong an interest in defending himself and his home as any law-abiding individual." 614 F.3d at 92. Nevertheless, we held that "a felony conviction disqualifies an individual from asserting" his fundamental right to "defense of hearth and home." *Id.* In this

12

regard, the Second Amendment is not unique; felony convictions trigger a number of disabilities, many of which impact fundamental constitutional rights. *See, e.g.*, *McKune v. Lile*, 536 U.S. 24, 38 (2002) ("[L]awful conviction and incarceration necessarily place limitations on the exercise of a defendant's privilege against self-incrimination."); *Jones v. Helms*, 452 U.S. 412, 419 (1981) (upholding restrictions on a felon's fundamental right to travel); *Richardson v. Ramirez*, 418 U.S. 24, 54-56 (1974) (upholding a state law disenfranchising felons on the basis of criminal conviction); *see also* D.C. CODE § 49-401 (prohibiting felons from serving in a militia).

The federal felon gun dispossession statute, like the disabilities noted above, does not depend on *how* or *for what reason* the right is exercised. Rather, it focuses upon *whom* the right was intended to protect. The language in *Heller* makes this clear: the opinion does not refer to "regulations" on the possession of firearms by felons and the mentally ill, but rather to "prohibitions." 554 U.S. at 626. A "prohibition" does more than merely alter or restrain a person's behavior; it is "an edict, decree, or order which forbids, prevents, or excludes." OXFORD ENGLISH DICTIONARY (2d ed. 1989). Moreover, the prohibition discussed in *Heller* is a broad one: a person may "possess" any item over which he exercises "dominion and control." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) (quoting *United States v. Blackston*, 940 F.2d 877, 883 (3d Cir. 1991)). Thus, *Heller* forecloses any as-applied challenge based on the manner in which a felon wishes to exercise his Second Amendment rights.

Despite the breadth of this exclusion, denying felons the right to possess firearms is entirely consistent with the purpose of the Second Amendment to maintain "the security of a free State." U.S. CONST. amend. II. It is well-established that felons

13

are more likely to commit violent crimes than are other law-abiding citizens. *See*, *e.g.*, Bureau of Justice Statistics, *Recidivism of Prisoners Released in 1994* at 6 (2002) (finding that within a population of 234,358 federal inmates released in 1994, the rates of arrest for homicides were 53 times the national average). Moreover, felons forfeit other civil liberties, including fundamental constitutional rights such as the right to vote or to serve on a jury. For these reasons, we find persuasive the Ninth Circuit's conclusion that "felons are categorically different from the individuals who have a fundamental right to bear arms." *Vongxay*, 594 F.3d at 1115.

### III

The Supreme Court's decisions in *Heller* and *McDonald* compel the conclusion that 18 U.S.C. § 922(g)(1) is facially constitutional. It is also constitutional as applied to Barton because he has presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the Second Amendment. For these reasons, we will affirm the District Court's judgment of conviction and sentence.

14