**Raymond HOLLOWAY, Jr., Plaintiff**

v.

**Jefferson B. SESSIONS, III, Attorney General of the United States, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Andrew McCabe,[1] Acting Director of the Federal Bureau of Investigation, and the United States of America, Defendants**

**CIVIL ACTION NO. 1:17–CV–81**

United States District Court,
M.D. Pennsylvania.

Signed 07/19/2017

---

1. James B. Comey was Director of the Federal Bureau of Investigation when the instant action was commenced against him in his official capacity. On May 9, 2017, Andrew McCabe succeeded James B. Comey as Acting Director of the Federal Bureau of Investigation. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew McCabe is substituted as the defendant in this action. See FED. R. CIV. P. 25(d).

Adam J. Kraut, Joshua G. Prince, Prince Law Offices, P.C., Bechtelsville, PA, for Plaintiff.

Gary D. Feldon, U.S. Department of Justice, Washington, DC, for Defendants.

**MEMORANDUM**

Christopher C. Conner, Chief Judge

Plaintiff Raymond Holloway, Jr. ("Holloway"), commenced this civil rights litigation raising an as-applied challenge to 18 U.S.C. § 922(g)(1) under the Second Amendment to the United States Constitution.[2] Holloway contends that he has set forth sufficient *allegata* under the Third Circuit Court of Appeals' recent decision in Binderup v. Attorney General, 836 F.3d 336 (3d Cir. 2016) (*en banc*), cert. denied, —— U.S. ——, 137 S.Ct. 2323, 198 L.Ed.2d 746 (2017), to rebut the presumption that his conviction for driving under the influence of alcohol ("DUI") justifies his disarmament under § 922(g)(1).

Before the court is defendants' motion to dismiss Holloway's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Also pending is Holloway's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and defendants' motion to strike Holloway's summary judgment motion as premature.[4]

## I. Factual Background and Procedural History

Holloway received his first DUI at the age of 22 in 2003.[5] Holloway participated in Pennsylvania's Accelerated Rehabilitative Disposition ("ARD") program, and the offense was expunged from his record upon completion of the program.[6] The offense no longer appears on Holloway's criminal record.[7]

Holloway received a second DUI at the age of 24 in early 2005.[8] Holloway was charged with and pled guilty to DUI at the highest rate of alcohol, second offense.[9] Under Pennsylvania law, the DUI highest rate offense applies to individuals who drive, operate, or control a vehicle with a blood alcohol content of 0.16% or higher.[10] The state classifies the offense as a first degree misdemeanor punishable by up to five years in prison.[11] Holloway received a sentence of 60 months' intermediate punishment, including 90 days of work release, in addition to court-ordered drug and alcohol treatment, costs, and a $1,500 fine.[12] This is the only offense on Holloway's criminal record.[13]

In September of 2016, Holloway attempted to purchase a firearm out of concern for his safety and the safety of his family.[14] His application was denied following an instant background check.[15] Holloway challenged the results of the instant

2. Doc. 1.

3. Doc. 4.

4. Docs. 11, 15.

5. Doc. 1 ¶¶ 8, 19.

6. Id.

7. Id.; see also Doc. 1–2, Ex. A.

8. Doc. 1 ¶¶ 8, 20; see also Doc. 1–2, Ex. A.

9. Doc. 1 ¶¶ 8, 20; see also Doc. 1–2, Ex. A.

10. See 75 Pa. Cons. Stat. § 3802(c).

11. See id. § 3803(b)(4); see also 18 Pa. Cons. Stat. § 1104(1).

12. Doc. 1 ¶¶ 8, 22; Doc. 1–2, Ex. B.

13. Doc. 1 ¶ 21; Doc. 1–2, Ex. A.

14. Doc. 1 ¶ 29.

15. Id. ¶¶ 29–30.

check.[16] On October 3, 2016, the Pennsylvania State Police sent Holloway a letter confirming the instant check as well as the denial of his purchase.[17] The letter cites Holloway's 2005 DUI conviction as a prohibiting offense under 18 U.S.C. § 922(g)(1).[18]

Holloway commenced this action with the filing of a one-count complaint on January 13, 2017.[19] The complaint names as defendants the United States of America; Jefferson B. Sessions, Attorney General of the United States; Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and Andrew McCabe, Acting Director of the Federal Bureau of Investigation.[20] Holloway seeks a declaration pursuant to the Third Circuit's decision in Binderup that § 922(g)(1) is unconstitutional as applied as well as a permanent injunction barring defendants from applying the firearm ban to him.[21]

Defendants move to dismiss Holloway's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Holloway's 2005 conviction for DUI divests him of Second Amendment rights and defeats his as-applied challenge.[22] Holloway separately moves for summary judgment on his claim under Federal Rule of Civil Procedure 56, which motion defendants move to strike as premature.[23] The many issues raised by the parties' filings are ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.[24] When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." [25] In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." [26]

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the … claim is and the grounds upon which it rests." [27] To test the sufficiency of the complaint, the court conducts a three-step inquiry.[28] In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to

16. Id. ¶ 30.

17. See id.; Doc. 1–2, Ex. C.

18. Doc. 1 ¶ 30; Doc. 1–2, Ex. C.

19. Doc. 1.

20. Id. ¶¶ 9–12.

21. Id. at 13.

22. See Doc. 4; Doc. 5 at 2, 7–12.

23. See Docs. 11, 15.

24. FED. R. CIV. P. 12(b)(6).

25. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

26. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

27. Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

28. See Santiago v. Warminster Twp., 629 F.3d 121, 130–31 (3d Cir. 2010).

state a claim.' "[29] Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.[30] Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."[31] A claim is facially plausible when the plaintiff pleads facts "that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]

## III. Discussion

Federal law broadly proscribes and criminalizes possession of a firearm by persons convicted of "a crime punishable by imprisonment for a term exceeding one year."[33] The ban does not apply to state misdemeanors punishable by two years' imprisonment or less.[34] The statute exempts any person whose conviction has been expunged or set aside, who has been pardoned, or who has had their civil rights restored.[35] The parties agree—as does the court—that Holloway's conviction for DUI highest rate, punishable by up to five years' imprisonment, falls within the ambit of § 922(g)(1).[36] The conviction has not been expunged or set aside, and Holloway has not been pardoned or had his civil rights reinstated.[37]

Holloway entreats this court to declare the federal firearm prohibition unconstitutional as applied to him. He maintains that his DUI conviction is not sufficiently "serious" to deprive him of his Second Amendment right to bear arms.[38] Defendants' rejoinder is twofold: *first*, that Holloway's DUI conviction annuls his Second Amendment rights; and, *second*, assuming *arguendo* that Holloway's right to bear arms persists intact, the proscription of § 922(g)(1) is reasonably calculated to advance the government's substantial interest in public safety.[39]

The parties' arguments concenter upon application of the Third Circuit's recent decision in Binderup v. Attorney General, 836 F.3d 336 (3d Cir. 2016) (*en banc*). In Binderup, the *en banc* court debated the proper paradigm for resolving as-applied challenges to § 922(g)(1).[40] A majority of the court agreed that to apply § 922(g)(1) to plaintiffs therein—convicted of nonviolent state law misdemeanors—would transgress the Second Amendment.[41] Two opinions support the judgments: a lead opinion authored by Judge Ambro, and a partial

29. Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

30. Id. at 131–32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

31. Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955); Twombly, 550 U.S. at 556, 127 S.Ct. 1955.

32. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

33. 18 U.S.C. § 922(g)(1).

34. See id. § 922(a)(20)(b).

35. Id. § 921(a)(20).

36. Doc. 5 at 2; Doc. 6 at 6; see also 18 Pa. Cons. Stat. § 1104(1); 75 Pa. Cons. Stat. § 3803(b)(4).

37. See generally Doc. 1.

38. Doc. 1 ¶¶ 42, 44, 57.

39. See Doc. 5 at 2.

40. See Binderup, 836 F.3d at 339.

41. See id. at 356–67 (Ambro, J., plurality opinion, joined by two judges); id. at 357 (Hardiman, J., concurring in part and concurring in the judgments, joined by four judges).

concurrence and partial dissent authored by Judge Hardiman. The two blocs diverge sharply in their *ratio decidendi*,[42] and a dissent authored by Judge Fuentes critiques both approaches.[43] The instant dispute tasks the court to discern a prevailing standard from these constituent opinions.[44]

*Binderup* is epitomic among fractured decisions. Indeed, of fifteen judges, only three join the lead opinion *in extenso* and support the outcome-determinative analysis. To apply its guidance, we must first endeavor to extract "a single legal standard" that "produce[s] results with which a majority of the [judges] ... would agree."[45] We may combine votes of dissenting justices with plurality and concurring votes to establish a majority consensus.[46] When no one rationale enjoys majority support, we adopt the view of the members concurring in the judgment on the "narrowest grounds."[47] Judge Ambro sets forth these tenets in closing his lead opinion, enumerating six principles which reflect the "law of our Circuit" post-*Binderup*.[48] Bald application of Judge Ambro's formulation is difficult, however, given that only two judges

joined this conclusion.[49] Accordingly, we independently apply the interpretive rules described *ante* to ascertain *Binderup*'s controlling standards. Our view ultimately aligns with that articulated by Judge Ambro.

The *Binderup* result turned in large part on the Third Circuit's earlier decisions in United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010), and United States v. Barton, 633 F.3d 168 (3d Cir. 2011). In *Marzzarella*, the court developed a framework for evaluating challenges to firearm regulations levied via the Second Amendment.[50] At the first step, the court determines whether a challenged law burdens conduct protected by the Second Amendment.[51] If the answer is "yes," the court proceeds to step two and assesses the law "under some form of means-end scrutiny."[52] The law is constitutional if it survives the applicable level of scrutiny at step two.[53]

The Court of Appeals decided Barton the following year. Relying on the Supreme Court's decision in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the plaintiff

---

**42.** Compare id. at 350–57 (Ambro, J., plurality opinion, joined by two judges) with id. at 358–80 (Hardiman, J., concurring in part and concurring in the judgments, joined by four judges).

**43.** See id. at 387–411 (Fuentes, J., concurring in part, dissenting in part, and dissenting in the judgments, joined by six judges).

**44.** Fortunately, we do not write upon a blank slate. In a matter mirroring this action in all material respects, our colleague, the Honorable William W. Caldwell, carefully distilled and applied the divided decision. See Zedonis v. Lynch, 233 F.Supp.3d 417 (M.D. Pa. 2017). We are guided by Judge Caldwell's thorough disquisition *passim*.

**45.** United States v. Donovan, 661 F.3d 174, 182 (3d Cir. 2011) (first alteration in original) (quoting Planned Parenthood of Se. Pa. v.

Casey, 947 F.2d 682, 693 (3d Cir. 1991), rev'd on other grounds, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)).

**46.** See id. (citations omitted).

**47.** Id.

**48.** See Binderup, 836 F.3d at 356 (Ambro, J., plurality opinion, joined by two judges).

**49.** Id. at 339, 356.

**50.** Marzzarella, 614 F.3d at 89.

**51.** Id.

**52.** Id.

**53.** Id.

in Barton claimed that § 922(g)(1) violated his right to "use arms in defense of hearth and home." [54] The three-judge Third Circuit panel emphasized that Heller carved an unequivocal exemption for "longstanding prohibitions on the possession of firearms"—including the prohibition against possession by felons—which Heller deemed "presumptively lawful." [55] The court thus held that § 922(g)(1) does not, on its face, transgress the Second Amendment. [56]

Turning to Barton's as-applied challenge, the court found that Heller's use of the word "presumptively" with respect to the lawfulness of the felon-in-possession statute "implied that the presumption may be rebutted." [57] The court resolved that a successful as-applied challenge to § 922(g)(1) requires would-be firearm owners to distinguish themselves from those "historically barred" from possessing arms. [58] The court identified two examples: an individual convicted of a "minor, non[ ]violent crime" who shows that he or she "is no more dangerous than a typical law-abiding citizen," or an individual whose conviction is so dated that he or she "poses no continuing threat to society." [59] Because Barton's prior convictions were "closely related to violent crime," the court rejected his as-applied challenge. [60]

Binderup presented a much closer question. The plaintiffs were convicted of nonviolent state law misdemeanors, each carrying a maximum sentence above the § 922(g)(1) threshold. [61] Plaintiffs challenged the statutory prohibition as applied to them, stressing the nonviolent nature of their offenses and their relatively minor sentences. [62] Of the fifteen-judge panel, eight judges concluded that the firearm ban was unconstitutional as applied to the plaintiffs. [63] Two-thirds of the court agreed that Marzzarella governs challenges to § 922(g)(1), but disagreed as to the result worked by that standard. [64] Because a majority of the court held that Marzzarella applies, albeit to different ends, we follow its two-step framework *seriatim*.

54. Barton, 633 F.3d at 170 (quoting Heller, 554 U.S. at 635, 128 S.Ct. 2783).

55. Id. at 170–71 (quoting Heller, 554 U.S. at 626–27 & n.26, 128 S.Ct. 2783).

56. Id. at 172.

57. Id. at 173 (quoting Heller, 554 U.S. at 626–27 n.26, 128 S.Ct. 2783).

58. Id. at 174.

59. Id.

60. Id.

61. See Binderup, 836 F.3d at 340.

62. See id. at 339.

63. See id.

64. Compare id. at 346–47 (Ambro, J., plurality opinion, joined by six judges) and id. at 387 (Fuentes, J., concurring in part, dissenting in part, and dissenting in the judgments, joined by six judges) with id. at 358, 365–66 (Hardiman, J., concurring in part and concurring in the judgments, joined by four judges). Judge Hardiman's concurrence opines that Barton alone provides the exclusive test for constitutional attacks on § 922(g)(1), eliminating Marzzarella's second step and holding that Congress can never deprive persons who commit "non-serious" crimes of the right to bear arms. Id. at 358, 365–66 (Hardiman, J., concurring in part and concurring in the judgments, joined by four judges). At the other end of the spectrum, Judge Fuentes agrees that Marzzarella governs § 922(g)(1) challenges but finds all crimes constituting "felonies" within the meaning of the statute are "serious" by definition—and necessarily carry Second Amendment implications. See id. at 387–96 (Fuentes, J., concurring in part, dissenting in part, and dissenting in the judgments, joined by six judges). In other words, Judge Fuentes would foreclose all as-applied challenges at step one. See id.

### A. Step 1: The Historically–Barred Class

■ Step one of the Marzzarella–Binderup sequence tasks plaintiffs to identify the historical justifications for denying the right to bear arms to members of their class and then to distinguish themselves and their background from the typical person in that class.[65] Rebutting the presumed lawfulness of § 922(g)(1) requires far more than a plaintiff's *ipse dixit* assertion that he or she is nonviolent.[66] A plaintiff must instead make a "strong" showing distinguishing his or her circumstances "from those of persons historically excluded from Second Amendment protections."[67]

The Binderup court spoke at length to the traditional justifications for disarming convicted felons.[68] Judge Ambro's plurality opinion explored both jurisprudential and academic authorities and described § 922(g)(1)'s justification in terms of "vir-

tue."[69] The court observed that disarmament of persons who commit serious crimes dates to our Founders, who perceived serious criminal offenders as "unvirtuous."[70] The court acknowledged that those who commit "violent offenses" are a particular concern, but resolved that the class of "unvirtuous citizens" has traditionally been much broader.[71] Hence, the court held that deprivation of Second Amendment rights has been justified historically for all who commit "a serious criminal offense, violent or nonviolent."[72]

■ The question at step one therefore becomes whether a challenger was convicted of a sufficiently "serious" criminal offense.[73] That is, "only the seriousness of the purportedly disqualifying offense determines the constitutional sweep of statutes like § 922(g)(1)."[74] Judge Ambro developed a non-exhaustive list of factors

---

65. Binderup, 836 F.3d at 346–47 (Ambro, J., plurality opinion, joined by six judges) (citing Barton, 633 F.3d at 173–74).

66. Id.

67. Id.

68. See id. at 348–49.

69. See id. (citations omitted). Judge Ambro's opinion on this subject reflects the views of six other judges, including Judge Fuentes. It is unclear whether Chief Judge McKee, Judge Restrepo, and Judge Shwartz (each of whom joined Judge Fuentes' dissent) would concur in Judge Ambro's assessment. The stated basis for not joining this portion of the opinion is their position that Marzzarella cannot be reconciled with Barton, and that Barton must be overruled in its entirety. See id. at 339 n.1. Nonetheless, the trio joined in Judge Fuentes' dissent, which cited with approval authorities concluding that the firearm prohibition is tethered to notions of a "virtuous citizenry." See id. at 389–90 (Fuentes, J., concurring in part, dissenting in part, and dissenting in the judgments) (citations omitted). We deem this portion of Judge Ambro's opinion to be supported by a majority of the *en banc* court.

70. Id. at 348–49 (Ambro, J., plurality opinion, joined by six judges).

71. See id. at 348 (citing Heller, 554 U.S. at 626, 128 S.Ct. 2783).

72. Id. In the course of this analysis, the court overruled Barton in part, finding its holding that those who commit serious crimes can regain their Second Amendment rights over time to be inconsistent with the historical relationship between serious criminal conduct and forfeiture of the right to bear arms. See id. at 349–50 (Ambro, J., plurality opinion, joined by six judges); id. at 339 n.1 (noting that three judges joining in Judge Fuentes' dissent vote to overrule Barton entirely); id. at 387 n.72 (Fuentes, J., concurring in part, dissenting in part, and dissenting in the judgments) (voting to overrule Barton at least to the extent it states that as-applied challenges to § 922(g)(1) are permissible).

73. Id. at 349–50 (Ambro, J., plurality opinion, joined by six judges).

74. Id. at 350.

to assist courts in determining if a crime is so "serious" as to vitiate Second Amendment rights: *first,* whether the state classifies the offense as a felony or misdemeanor; *second,* whether the offense has actual or attempted violence as an element; *third,* the severity of the sentence actually imposed; and *fourth,* whether there is cross-jurisdictional consensus on the "seriousness" of the offense.[75] Courts must presume that any offense within the ambit of § 922(g)(1) is disqualifying unless the challenger offers a "strong reason" to conclude otherwise.[76]

Binderup arose in a summary judgment posture. As such, the opinion does not address proper application of the enumerated factors at the Rule 12 stage. Several factors—*viz.,* state classification of the offense, whether the offense has violence as an element, and any consensus among states as to seriousness—are ostensibly legal issues amenable to resolution at the pleading stage.[77] The severity of punishment, however, raises factual issues seemingly unsuited for Rule 12 disposition.[78] We view the factors identified by Judge Ambro as establishing a threshold pleading requirement: if a challenger pleads facts sufficient to tip the balance in his or her favor, they have satisfied their Rule 12 burden. We review Holloway's instant complaint through this prism.

Holloway alleges that his 2005 DUI conviction is not sufficiently "serious" to carry Second Amendment implications. In this regard, we find Judge Caldwell's decision in Zedonis v. Lynch, 233 F.Supp.3d 417 (M.D. Pa. 2017), to be particularly instructive. The challenger in Zedonis was convicted in the same year of the same crime as Holloway—DUI at the highest rate of alcohol under Pennsylvania law.[79] Applying Binderup's factors, Judge Caldwell observed that Pennsylvania classifies the offense as a misdemeanor[80]; that the state does not prohibit persons convicted of the offense from owning firearms[81]; that the offense does not necessarily have violence or attempted violence as an element[82]; and that Zedonis's sentence of three to six months' confinement could be deemed relatively "minor."[83] Judge Caldwell also surveyed the 50 states' laws and observed that while all states criminalize DUI, there is no consensus in classification or in severity of punishment.[84]

These observations led Judge Caldwell to conclude that Zedonis articulated a plausible as-applied challenge to § 922(g)(1).[85] Judge Caldwell acknowledged defendants' counterarguments concerning the dangers inherent in DUI and the nature of Zedonis's actual conduct—specifically, his blood alcohol content of more than three times the legal limit—but resolved that such additional proof was

---

75. Id. at 351–53.

76. Id. at 351.

77. See Zedonis, 233 F.Supp.3d at 428-31 nn. 7–9.

78. See id. at 431 n.9.

79. See id. at 428.

80. Id. (citing 18 Pa. Cons. Stat. § 1104(1)).

81. Id. (citing 18 Pa. Cons. Stat. § 6105(b), (c)(3)).

82. See id. at 428-29 (citing Begay v. United States, 553 U.S. 137, 147, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008)).

83. Id. at 430.

84. See id. at 432 (citing National Survey of State Laws: Part II: Criminal Laws: Section 8: Drunk Driving 127 (Richard A. Leiter ed., 7th ed. 2015)).

85. See id. at 432.

premature at the Rule 12 stage.[86] Hence, Judge Caldwell found that Zedonis satisfied step one of the Marzzarella–Binderup framework.

■ We reach the same result *sub judice*. Holloway was convicted of DUI at the highest rate under Pennsylvania law, a misdemeanor of the first degree which does not have violence as a requisite element.[87] He received a minor sentence compared to Zedonis: he was not incarcerated, but served 60 months' intermediate punishment, completed drug and alcohol treatment, and paid costs and a $1,500 fine.[88] We further note that no consensus has actualized among the 50 states concerning classification or punishment of the offense since Judge Caldwell canvassed the states' law in Zedonis.

Defendants asseverate that highest rate DUI is categorically "serious" because it reflects manifest disregard for public safety.[89] We do not discount this assertion, which is borne out by the number of individuals killed in DUI crashes annually—10,265 in 2015 alone.[90] Defendants will have full opportunity to advance this point following discovery. At this stage, we consider only whether Holloway pleads suffi-cient facts to make out a plausible claim—not whether defendants can rebut them. For purposes of Rule 12, Holloway has adequately pled that his DUI offense was not "serious" in the meaning of Marzzarella and Binderup.

The challenger maintains the ultimate burden of proving that his crime of conviction is not "serious." Whether the *probata* will substantiate Holloway's *allegata* remains to be determined. We also emphasize that Binderup's four-factor test is not exhaustive, and no one factor is dispositive. Judge Ambro made clear that there are "no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights."[91] Discovery may reveal additional information which does not fit neatly within any one of the four factors but nonetheless evinces that Holloway's underlying DUI offense was indeed serious. At this juncture, we hold only that Holloway has sufficiently stated a *plausible* challenge to § 922(g)(1).[92]

### B. Step 2: Government Justification

■ The burden at step two of the Marzzarella–Binderup framework shifts to

---

86. See id. at 429-32.

87. See Doc. 1 ¶¶ 8, 20, 42, 44; see also 75 Pa. Cons. Stat. §§ 8302(c), 8303.

88. See Doc. 1 ¶¶ 8, 20; Doc. 1-2, Ex. B.

89. See Doc. 5 at 7–10; Doc. 13 at 3–4. Defendants rely on this assertion almost exclusively, and to the neglect of the Binderup factors. See Doc. 5 at 7–10; Doc. 13 at 3–4.

90. See U.S. Dep't of Transp., Nat'l Highway Traffic Safety Admin., 2015 Motor Vehicle Crashes: Overview 1, 9 (2016).

91. Binderup, 836 F.3d at 351 (Ambro, J., plurality opinion, joined by two judges).

92. In his concurring opinion, Judge Hardiman suggested that the appropriate metric is not "seriousness" but "dangerousness." Bind-erup, 836 F.3d at 358, 367–71 (Hardiman, J., concurring in part and concurring in the judgments). More specifically, he opined that the proper test is whether the challenger "would present a danger to the public if armed." Id. at 369. Judge Hardiman would look more broadly to the nature of the offense, its historical treatment, and the challenger's propensity to violence, as demonstrated by the offense itself or otherwise. See id. at 374–77. The instant complaint would satisfy this standard as well. At present, there is no indication in the record that Holloway has a propensity toward violence, nor is there any suggestion that his crime involved an element of violence. Consequently, we could not conclude at this juncture that Holloway "has been, or would be, dangerous, violent, or irresponsible with firearms." Id. at 377.

the government to establish that § 922(g)(1) satisfies intermediate scrutiny.[93] The law survives intermediate scrutiny if the government shows a "substantial fit" between the disarmament of the plaintiff effected by § 922(g)(1) and its compelling interest in "preventing armed mayhem." [94] The standard requires "some meaningful evidence, not mere assertions," to substantiate the government's justification.[95]

■ Defendants aver broadly that disarming those convicted of DUI promotes the government's compelling interest in public safety.[96] In requesting that we dismiss Holloway's complaint at step two, defendants cite a 2016 study which found a link between DUI and increased risk of violence among certain handgun purchasers in California between 1977 and 1991.[97] Preliminarily, we are hesitant to dismiss a complaint on the basis of such narrowly-tailored and dated empirical evidence. Moreover, we find this argument to be premature. There may well be cases where the government's justification is so obvious as to be a matter of "common sense." [98] But this is not such a case, and the court requires a more thoroughly developed record before testing the strength of the gov-

ernment's justification.[99] We will accordingly deny defendants' motion to dismiss.

## IV. Conclusion

In his dissent in Binderup, Judge Fuentes surmised that the plurality's challenger-specific approach would invite a deluge of as-applied constitutional litigation by disarmed felons.[100] This case and the others pending throughout the Third Circuit incarnate that prediction.

Given the multitude of factual considerations which inform the analysis at both steps of the Marzzarella–Binderup framework, we are compelled to deny defendants' motion to dismiss. We will also deny Holloway's motion for summary judgment as premature and deny defendants' motion to strike same as moot. An appropriate order shall issue.

93. See id. at 353–56 (Ambro, J., plurality opinion, joined by two judges) (citing Marzzarella, 614 F.3d at 97); id. at 397–98 (Fuentes, J., concurring in part, dissenting in part, and dissenting in the judgments, joined by six judges).

94. Id. at 353–56 (Ambro, J., joined by two judges); see also id. at 397–98, 402 (Fuentes, J., joined by six judges).

95. Id. at 354 (Ambro, J., joined by two judges) (citation omitted).

96. Doc. 5 at 13–14; Doc. 13 at 7–9.

97. Doc. 5 at 13–14 n.6 (citing Garen J. Wintemute, et al., Firearms, Alcohol and Crime:

Convictions for Driving Under the Influence (DUI) and Other Alcohol–Related Crimes and Risk for Future Criminal Activity Among Authorised Purchasers of Handguns, 22 INJURY PREVENTION 302 (2016)); Doc. 13 at 8–9 n.8 (same).

98. See Binderup, 836 F.3d at 354 (Ambro, J., joined by two judges).

99. See Zedonis, 233 F.Supp.3d at 432.

100. See Binderup, 836 F.3d at 380, 407–11 (Fuentes, J., concurring in part, dissenting in part, and dissenting in the judgments).