(b) TRADITIONAL JUSTIFICATION
"[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.' " Binderup , 836 F.3d at 348 (quoting United States v. Yancey , 621 F.3d 681, 684-85 (7th Cir. 2010) ). Unvirtuous citizens include those "persons who have committed serious crimes." Id. at 348-49.
The class of persons who have committed serious crimes (i.e. unvirtuous citizens) "forfeit the right to possess firearms much the way they 'forfeit other civil liberties, including fundamental constitutional rights.' " Id. at 349 (quoting United States v. Barton , 633 F.3d 168, 175 (3d Cir. 2011) ). Based on his 2002 conviction, Clark appears to be a member of this class.
(c) APPLICATION TO PLAINTIFF
Clark has a burden to overcome the presumptive lawfulness of § 922(g)(1) by showing that his conviction under 18 Pa. Cons. Stat. § 6106(a)(2) was not a serious crime, i.e., to distinguish his *542 circumstances from the historically barred class of unvirtuous citizens. To determine whether a crime is "serious," the court may consider, among other factors:[4]
• the statutory maximum penalty of the crime;
• whether the crime is a misdemeanor;
• whether use of force is an element of the crime;[5]
• the sentence actually imposed upon the challenger; and
• whether there is consensus among the states about the seriousness of the offense.
Id. at 351-53. This analysis is irrespective of whether the crime is violent or not. Id. at 349. "[E]vidence of a challenger's rehabilitation or his likelihood of recidivism is not relevant to the step-one analysis." Id. at 356. The court will consider each of the factors identified in Binderup .
(i) The statutory maximum penalty of the crime
18 Pa. Cons. Stat. § 6106(a)(2) allows for a maximum penalty of five years imprisonment.
(ii) Whether the crime is a misdemeanor
18 Pa. Cons. Stat. § 6106(a)(2)[6] is a misdemeanor that prohibits carrying a firearm without a license. It applies to persons otherwise eligible to possess a firearm and to persons who have not committed any other criminal violation.
(iii) Whether use of force is an element of the crime
Use of force is not an element of this crime.
(iv) The sentence actually imposed upon the challenger
Clark was sentenced to one year of probation and a fine of two-hundred and forty-two dollars, which is a minimal sentence.
In Binderup , the court restored the Second Amendment rights of two challengers ("Binderup" and "Suarez") who received tougher sentences following their convictions than Clark. Id. at 340. Binderup was convicted under Pennsylvania law for corrupting a minor, a misdemeanor subject to imprisonment for up to five years, and was sentenced to three years probation and a three-hundred dollar fine.[7] Id. at 340 ; 18 Pa. Cons. Stat. §§ 6301(a)(1)(i). Suarez was convicted under Maryland law for carrying a handgun without a license, which is a misdemeanor subject to imprisonment for "not less than 30 days and not [more than] three years or a fine of not less than $250 and not [more than] $2,500 or both." Id. at 340 ; Md. Code Ann. Art. 27, § 36(B)(b) (1990) (now codified at Md. Code Ann. Crim. Law § 4-203 ). Suarez received a suspended sentence of 180 days *543 of imprisonment, a $500 fine, and a year of probation. Id. at 340.[8]
(v) Whether there is consensus among the states about the seriousness of the offense
There is no consensus regarding the seriousness of carrying a firearm without a license among the states. Thirty-eight states punish the unlicensed carrying of a concealed weapon. See Law Ctr. to Prevent Gun Violence, Concealed Weapons Permitting , http://smartgunlaws.org/gun-laws/policy-areas/firearms-in-public-places/concealed-weapons-permitting/ (last visited July 5, 2018). Although some states classify this as a serious crime, "more than half prescribe a maximum sentence that does not meet the threshold of a traditional felony (more than one year in prison) and others do not even require a specific credential to carry a concealed weapon." Binderup , 836 F.3d at 352 (citing to Thomson Reuters, 50 State Survey: Right to Carry a Concealed Weapon (Statutes) (October 2015); U.S. Gov't Accountability Off., States' Laws and Requirements for Concealed Carry Permits Vary Across Nation 73-74 (2012) available at http://www.gao.gov/assets/600/592552.pdf (last visited Aug. 7, 2018) ).
(vi) Summary and Application of the Step One Factors
The 2002 crime has a maximum penalty of five years, the crime is a misdemeanor, use of force is not an element of the crime, Clark received a relatively light sentence, and there is no consensus regarding the crime's seriousness. Accordingly, it is evident that Clark adequately and compellingly demonstrated the factual grounds necessary to satisfy step one. In Binderup , the court determined that crimes of Binderup and Suarez were not serious enough to place them with the class of "unvirtuous" citizens that § 922(g)(1) was intended to restrain. Since Clark's crime was treated less seriously than the challengers in Binderup , it is not serious enough for his claim to fail at step one.
2. STEP TWO
There is "[n]o doubt that § 922(g)(1) is intended to further the government interest of promoting public safety by 'preventing armed mayhem.' " Binderup , 836 F.3d at 353 (citing United States v. Skoien , 614 F.3d 638, 642 (7th Cir. 2010) (en banc) ). "Against that important government interest [this court] must consider whether banning the challenger from possessing firearms and ammunition is substantially related to that purpose." Brooks , 2018 WL 2388817, at *5, 2018 U.S. Dist. LEXIS 87591, at *14 (citing Binderup , 836 F.3d at 341, 353 ). This court must balance "the Challengers' total disarmament [with] the promotion of public safety." Binderup , 836 F.3d at 354. The government must "present some meaningful evidence, not mere assertions, to justify its predictive ... judgments" regarding the challenger's potential future commitment of crimes. Id. "Parties may use statistics to show that people who commit certain crimes have a high (or low) likelihood of recidivism that warrants (or does not warrant) disarmament, even decades after a conviction." Id. at 355.
The government bears the burden of persuasion at step two. The government must present some meaningful evidence, not mere assertions, to justify its predictive judgment that Clark is likely *544 to misuse a firearm. Binderup , 836 F.3d at 354. Here, the government presented only the circumstances surrounding Clark's 2002 conviction and a recent work-related incident as evidence of his potential to commit crimes in the future. The fact that the 2002 conviction stemmed from an argument is potentially troublesome. Citizens who turn to violence following arguments would present a clear danger to the community. There is no evidence, however, that Clark used the firearm threateningly in 2002. Clark testified, without dispute, he was simply putting it away in his truck before following his girlfriend into the restaurant to continue the verbal argument. He made a conscious, responsible decision to put the gun in safekeeping despite being in the midst of an argument. Following the incident, Carvella still described Clark as her "best friend" and told Dr. Meyer that she never felt endangered during the incident. (ECF No. 25-1 at 35). Dr. Meyer opined that Clark was fit for duty and did not present a significant danger to others. (ECF No. 25-1 at 36). The couple broke up about a year after the incident, but Clark has since married and had no issues of domestic violence. The government offered no contrary evidence.[9]
The length of time between Clark's conviction and the filing of this action in 2018 is significant. He has had no encounters with law enforcement since September 2001. In Binderup , Judge Ambro discounted the government's estimate of the likelihood of recidivism because Binderup's and Suarez's offenses were, respectively, 20 and 26 years old. Binderup , 836 F.3d at 353-54. The court cited a study that explained: "[g]enerally, the risk of recidivism was highest during the first year after admission to probation," and that "[a]s released prisoners and probationers age, they tend to exhibit lower rates of recidivism." Id. at 354 (citing Iowa Div. of Crim. & Juvenile Justice Planning, Recidivism Among Iowa Probationers 2 (July 2005), available at http://publications.iowa.gov/15032/ (last visited July 30, 2018) ). Approximately seventeen years have passed since the incident that led to Clark's conviction. His risk of recidivism has, statistically speaking, significantly diminished.
The incident of alleged insubordination at work is not evidence of behavioral patterns with a likelihood of recidivism or unsuitability to possess a firearm. Dropping cheeseburgers on the floor and walking away during an argument with a superior officer does not evince that Clark would mishandle a firearm if similarly frustrated.
Clark expresses a legitimate reason for desiring firearms and the government presented insufficient evidence to show he is at risk of recidivism. Upholding the ban on his possession of firearms and ammunition does not substantially further the government interest of preventing armed mayhem. Clark met his burden at step one; the government failed to meet its burden at step two.
*545 IV. CONCLUSION
Clark brought an as-applied challenge to 18 U.S.C. § 922(g)(1), which is governed by the Binderup framework. He adequately and compellingly demonstrated the factual grounds necessary to satisfy step one by showing that his crime was not serious enough to include him in the historically barred class. At step two, the government did not present enough evidence to show that restoring Clark's Second Amendment rights substantially impairs the legitimate government interest of preventing armed mayhem. Accordingly, Clark's motion for summary judgment will be granted.
Clark did not submit a proposed order with his motion, as required by the court's Local Rules. Within seven days, counsel for Clark shall meet and confer with defense counsel and submit a proposed order to restore Clark's civil rights under the Second Amendment.
An appropriate order follows.
ORDER
And now this 21st day of August, 2018, in accordance with the memorandum opinion, the motion for summary judgment is GRANTED. Within seven days, plaintiff's counsel shall meet and confer with defense counsel and submit a proposed order to restore Christopher Clark's civil rights under the Second Amendment.

The parties in this case did not address any other factors.

These first three factors-"the elements of the offense, the actual sentence, and the state of the law"-are "objective indications of seriousness ... well within the ambit of judgment exercised daily by judges." Binderup , 836 F.3d at 353 n.5.

18 Pa. Cons. Stat. § 6106(a)(2) provides: "A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree."

Despite Binderup receiving a tougher sentence than Clark, the court in Binderup called his sentence a "colloquial slap on the wrist." Binderup , 836 F.3d at 340.

Eight years after the conviction for carrying a firearm without a license, Suarez was convicted for the state-law misdemeanor of driving under the influence of alcohol. Id. This conviction, however, was not subject to § 922(g)(1). Id.

The statement of an anonymous witness in a criminal complaint cannot defeat summary judgment. See Damascus Bakery, Inc. v. Elwell , No. CIV. 08-1568 WJM, 2010 WL 3359526, at *5 (D.N.J. Aug. 25, 2010) ("Evidence derived from this criminal complaint, however, is hearsay, and "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment"); accord Graham v. Jersey City Police Dep't , No. CIV.A. 11-7326, 2014 WL 7177362, at *3 (D.N.J. Dec. 16, 2014) ("statements made to police from a witness are inadmissible hearsay where, as in this case, Defendants are offering the police report to establish the truth of the matters set forth in the report").