COURT OF APPEALS
DECISION
DATED AND FILED

April 15, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP540-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV891

IN COURT OF APPEALS
DISTRICT III

---

TRAVIS LEE SCHINKE,

PETITIONER-APPELLANT,

V.

JOSHUA KAUL, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF WISCONSIN,

RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Travis Schinke appeals an order affirming a decision by the Wisconsin Department of Justice (DOJ) denying his application for a license to carry a concealed weapon ("CCW license"). Schinke argues that the DOJ erred by denying him a CCW license because the offense disqualifying him from obtaining a license is not a "misdemeanor crime of domestic violence" under federal law, the denial violates his Second Amendment rights, and the DOJ failed to provide a factual basis for denying him a CCW license. We reject Schinke's arguments and affirm.

## BACKGROUND

¶2      In 2022, Schinke applied to the DOJ for a CCW license. The DOJ must issue a CCW license to an applicant if he or she completes the application process in WIS. STAT. § 175.60(7) (2023-24)[1] and is not disqualified under § 175.60(3). Sec. 175.60(2)(a). An individual is disqualified under § 175.60(3) if, among other things, that individual "is prohibited under federal law from possessing a firearm that has been transported in interstate or foreign commerce." Sec. 175.60(3)(b). Federal law prohibits any person "who has been convicted in any court of a misdemeanor crime of domestic violence" from possessing a firearm. 18 U.S.C. § 922(g)(9).

¶3      The DOJ denied Schinke's application because Schinke had been convicted of a misdemeanor crime of domestic violence and was therefore disqualified from possessing a firearm under federal law. Specifically, in 2004, Schinke pled no contest to, and was convicted of, misdemeanor battery as an act of

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted. This is an expedited appeal under WIS. STAT. RULE 809.17.

domestic abuse in Outagamie County Case No. 2003CM2411.[2] According to the criminal complaint in that case, the victim told law enforcement that she and Schinke had been "boyfriend and girlfriend for approximately four years until recently" and that Schinke had "resided with her for a short period of time previously."

¶4    Schinke petitioned the circuit court, pursuant to WIS. STAT. § 175.60(14m)(a), for review of the DOJ's denial of his application. Schinke argued that the DOJ erred by disqualifying him from possessing firearms under federal law because he had not been convicted of a misdemeanor crime of domestic violence. Schinke also argued that the notice he received from the DOJ denying his application included a reason for the denial, but not a factual basis for that denial, and thereby the DOJ failed to comply with § 175.60(9)(b)2. As relief, Schinke sought, among other things, a reversal of the DOJ's denial of his application and a "declaration that [Schinke] is not prohibited by law from possessing firearms or ammunition."

¶5    Following the Attorney General's answer and filing of the record, Schinke filed an amended petition to address his 2004 conviction. In that petition, Schinke argued that the victim denied "the existence of a domestic relationship" and denied "having told the police that one existed." The amended petition included an affidavit from the victim stating the same. Schinke's initial brief to the circuit court also included an affidavit from Schinke, stating that he and the victim "had never lived together or cohabited." Schinke also stated that throughout his relationship with the victim, he and the victim had maintained their

---

[2] Schinke also pled no contest to, and was convicted of, disorderly conduct in that case.

own places of residence, they did not have a joint banking account, they did not contribute to each other's support, and he never used the victim's address as his own address "for such purposes as receiving mail, registering to vote, or filing income tax returns." After receiving briefs from the parties, but before the court's nonevidentiary hearing, Schinke filed a supplemental brief raising, for the first time, an argument based on the Second Amendment, which we discuss in more detail below.

¶6 At the hearing, the circuit court orally affirmed the DOJ's decision, concluding that the DOJ did not err by denying Schinke a CCW license and did not violate his Second Amendment rights. The court determined that the DOJ relied on Schinke's 2004 conviction to support its decision and that the attached domestic abuse modifier included in the judgment of conviction showed that his conviction was domestic abuse related. The court further determined that the criminal complaint supported a finding that Schinke and the victim's relationship "was a domestic relationship in that the parties" resided together, "[e]ven though it may have been short-term."

¶7 Schinke now appeals. Additional facts will be provided below as necessary.

## DISCUSSION

¶8 On appeal, Schinke seeks reversal of the DOJ's decision denying him a CCW license on three grounds, which we discuss below. We will reverse the DOJ's decision if: (1) the DOJ "failed to follow any procedure, or take any action, prescribed under" WIS. STAT. § 175.60; (2) the DOJ "erroneously interpreted a provision of law and a correct interpretation compels a different action"; or (3) the DOJ's decision "depends on a finding of fact that is not

4

supported by substantial evidence in the record." Sec. 175.60(14m)(f)1.-3. "Substantial evidence exists if, after considering all the evidence of record and after drawing all available inferences from that evidence, 'reasonable minds could arrive at the conclusion reached by the trier of fact.'" *Vega v. LIRC*, 2022 WI App 21, ¶38, 402 Wis. 2d 233, 975 N.W.2d 249 (citation omitted).

## I. Misdemeanor Crime of Domestic Violence

¶9 First, Schinke argues that he was not convicted of a misdemeanor crime of domestic violence, as that term is defined in 18 U.S.C. § 921(a)(33). A misdemeanor crime of domestic violence is defined as an offense that: (1) "is a misdemeanor under Federal, State, Tribal, or local law"; (2) "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon"; and (3) was "committed … by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim."[3] Sec. 921(a)(33)(A)(i)-(ii); *see also* 27 C.F.R. § 478.11 (2023).

¶10 Schinke concedes that he was convicted of a misdemeanor that has, as an element, the use of physical force, but he disputes that he had the requisite domestic relationship with the victim. Specifically, Schinke argues that the domestic relationship required for purposes of 18 U.S.C. § 921(a)(33) is different from—and narrower than—the domestic relationship required for purposes of

---

[3] The offense may also be committed "by a person who has a current or recent former dating relationship with the victim," 18 U.S.C. § 921(a)(33)(A)(ii); however, that portion of § 921(a)(33)(A)(ii) only applies to convictions entered after June 25, 2022. *See* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12005(b) 136 Stat. 1313, 1332 (2022); *see also* Bipartisan Safer Communities Act Conforming Regulations, 89 Fed. Reg. 28, 630-31 (April 19, 2024). Thus, it does not apply to Schinke's 2004 conviction.

WIS. STAT. § 968.075(1)(a). Citing 27 C.F.R. § 478.11 (2023), Schinke contends that the domestic relationship contemplated in § 921(a)(33) requires two persons living "together in an intimate relationship for the purpose of making the place their home," which is different from the requirement in § 968.075(1)(a) that a victim of domestic abuse can be "an adult with whom the person resides or formerly resided."

¶11    Schinke asserts that while his merely living together with the victim for some time satisfies the domestic relationship for purposes of WIS. STAT. § 968.075(1)(a), it is insufficient for purposes of 18 U.S.C. § 921(a)(33) because there is no evidence that he ever "had a purpose of making the victim's residence his own."[4]  Because of these differences, Schinke claims that his 2004 conviction is not a misdemeanor crime of domestic violence under § 921(a)(33), notwithstanding it including the domestic abuse modifier under § 968.075(1)(a). Therefore, he contends, his 2004 conviction does not support the DOJ's finding that Schinke satisfied the domestic relationship requirement.

¶12    Federal courts, however, have held that a "live-in" partner "qualifies as a domestic relationship for purposes of" 18 U.S.C. § 921(a)(33), *see United States v. White*, 593 F.3d 1199, 1204-05 (11th Cir. 2010) (citation omitted), including a "live-in" girlfriend of two months, *see United States v. Shelton*, 325 F.3d 553, 563 (5th Cir. 2003).  Furthermore, the regulation on which Schinke

---

[4] It appears Schinke is arguing that the language in the federal regulation on which he relies applies to both the "cohabiting" and "similarly situated to a spouse" relationship requirements in 18 U.S.C. § 921(a)(33)(A)(ii), and, based on that language, his offense does not qualify as a misdemeanor crime of domestic violence under either type of relationship.  As we explain below, *see infra* ¶12, Schinke's argument fails, regardless of the basis on which he is attempting to rely.

relies is not the definition that federal courts use to define "similarly situated to a spouse." It is simply an example provided in the regulation of a relationship that would be "similarly situated to a spouse" for purposes of § 921(a)(33). *See* 27 C.F.R. § 478.11 (2023) (providing that "two persons who are residing at the same location in an intimate relationship with the intent to make that place their home would be similarly situated to a spouse"). In other words, both the wording of the governing federal statute itself and the cases applying it reflect that the type of cohabitation between the victim and offender is not limited in the manner Schinke asserts.[5] Thus, the difference that Schinke points out between the federal regulation and the domestic abuse modifier in WIS. STAT. § 968.075(1)(a) is irrelevant to determining whether the DOJ's finding that Schinke had the required domestic relationship for purposes of § 921(a)(33) is supported by substantial evidence.

¶13 We conclude that substantial evidence supports the DOJ's finding that Schinke's relationship with the victim in his 2004 conviction satisfied the domestic relationship requirement for purposes of 18 U.S.C. § 921(a)(33). The DOJ's finding is supported by the victim's statements reported by law enforcement and provided in the criminal complaint that she and Schinke had been dating for approximately four years "until recently," and that Schinke had "resided with her for a short period of time previously." These facts also support Schinke's no-contest plea to misdemeanor battery with the domestic abuse modifier, which requires the victim of domestic abuse to be, among other things, "an adult with whom the person resides or formerly resided." *See* WIS. STAT. § 968.075(1)(a).

---

[5] Notably, Schinke cites to no case law in support of his argument.

Even though a domestic relationship is not required to be an element of the predicate crime of conviction for purposes of § 921(a)(33), *United States v. Hayes*, 555 U.S. 415, 418 (2009), Schinke's plea and conviction to misdemeanor battery with the domestic abuse modifier provide additional support for the DOJ's finding that the relationship requirement under federal law is satisfied.

¶14    Although Schinke's and the victim's affidavits, drafted many years later, now claim that they never "resided" together, the DOJ was not required to disregard the evidence of the 2004 conviction and the criminal complaint when making its decision. Based on that evidence, it was reasonable for the DOJ to conclude that the victim was Schinke's "live-in" girlfriend, at least for some period of time, not merely his roommate. Therefore, the DOJ's finding that the victim satisfied the domestic relationship requirement for purposes of 18 U.S.C. § 921(a)(33) is supported by substantial evidence.[6]

## II. Schinke's Second Amendment Argument

¶15    Schinke next argues that the circuit court implicitly, and improperly, placed the burden on him to show that the DOJ violated his Second Amendment

---

[6] In his reply brief, Schinke argues that his petition for review in the circuit court also sought a declaration that he was "not prohibited by law from possessing firearms or ammunition," to which the substantial evidence standard does not apply. He claims that his and the victim's affidavits support his request for declaratory relief, but the circuit court relied only on hearsay in the criminal complaint. Schinke does not explain why the court could not rely on the criminal complaint (or on Schinke's plea to the facts in that complaint), and he does not explain under what standard of review we would examine the court's decision to do so. Thus, to the extent Schinke argues that the court failed to consider his request for declaratory relief, we reject that argument as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). In any event, neither the circuit court nor this court could conclude that Schinke is entitled to the broad declaratory relief he seeks without at least first concluding that the DOJ's decision is not supported by substantial evidence. As we have concluded the opposite, Schinke's claim for declaratory relief does not affect our analysis.

rights.[7] He contends that it was the DOJ's burden to show that its denial of his CCW license was consistent with "the nation's historical tradition of firearms regulation" and that the DOJ failed to provide a "historical and textual analysis" showing that "provisions analogous to [misdemeanor crime of domestic violence] prohibitions on possession of firearms were extant in or around 1791." In response, the Attorney General notes that Schinke did not develop this argument in the circuit court in a way that the Attorney General could respond and, therefore, Schinke forfeited the argument.

¶16    An issue on appeal is forfeited when a party fails to sufficiently develop the issue in the circuit court in a way that allows the court and the opposing party to address the issue. *See **Schill v. Wisconsin Rapids Sch. Dist.**,* 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177; *see also **State v. Davis**,* 2021 WI App 65, ¶37, 399 Wis. 2d 354, 965 N.W.2d 84 ("A party forfeits a potential argument by not developing it in the circuit court and by not presenting it on appeal."). We agree with the Attorney General that Schinke forfeited his Second Amendment argument. The record shows that Schinke summarily raised a Second Amendment argument only *after* the parties completed briefing, and he never argued that the DOJ failed to provide a historical and textual analysis showing that its denial did not violate Schinke's Second Amendment rights.

¶17    In his initial brief to the circuit court, Schinke argued only that he had not been convicted of a misdemeanor crime of domestic violence and that the DOJ failed to provide a factual basis for the denial of Schinke's application for a

---

[7] The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms," U.S. CONST. amend. II, and was made applicable to the states through the Fourteenth Amendment in ***McDonald v. City of Chicago***, 561 U.S. 742, 750 (2010).

CCW license. Both the Attorney General's response brief and Schinke's reply brief addressed these two issues. The only reference to the Second Amendment in Schinke's reply brief was a statement that "the legal issue in this case is the permanent deprivation of [Schinke's] fundamental Second Amendment right to keep and bear arms." Schinke did not otherwise argue in either of his briefs that the DOJ failed to provide historical and textual evidence showing that its denial did not violate Schinke's Second Amendment rights.

¶18 It was only after the parties had completed briefing that Schinke filed a supplemental brief raising a Second Amendment argument. Citing *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), Schinke argued that "the constitutionality of 18 U.S.C. § 922(g)(9), especially as applied to [Schinke] …, is highly questionable" because, based on a recent application of *Bruen* to a different provision, 18 U.S.C. § 922(g)(8),[8] "[a]t the time of the ratification of the Second Amendment in 1791, prohibitions on carrying firearms by misdemeanants was unknown." But Schinke's supplemental brief itself did not argue that the DOJ had failed to provide the historical and textual analysis that he now argues it failed to provide, and he did not make this argument at the hearing where the circuit court issued its oral ruling.[9]

¶19 Schinke contends he raised a Second Amendment argument in the circuit court and points to the one sentence in his reply brief referring to the Second Amendment. But Schinke does not point to any pleading in which he

---

[8] *See United States v. Rahimi*, 59 F.4th 163 (5th Cir.), *withdrawn*, 61 F.4th 443 (5th Cir. 2023), *rev'd*, 602 U.S. 680 (2024).

[9] The Attorney General briefly addressed Schinke's supplemental brief at the oral ruling, noting a distinction between the provision at issue in *Rahimi* and the one at issue here.

argued that the DOJ had failed to provide historical and textual evidence showing that its denial did not violate the Second Amendment. Thus, he did not sufficiently develop this argument in a way that provided both the circuit court and the Attorney General with an opportunity to address that argument. Because Schinke insufficiently developed the Second Amendment argument in the circuit court, we conclude that he forfeited the argument on appeal. *See Schill*, 327 Wis. 2d 572, ¶45 & n.21. And given the foregoing circumstances, we will not exercise our discretion to ignore the forfeiture and address Schinke's argument. *See State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530 ("[A] reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case.").

### III. Factual Basis for the DOJ's Denial

¶20 Finally, Schinke argues that the DOJ failed to provide a factual basis for its denial and, due to that failure, he requests that we reverse the DOJ's decision so that the DOJ can provide Schinke with a factual basis for the denial. Upon denying an application for a CCW license, the DOJ must "inform the applicant in writing, stating the reason and the factual basis for the denial." WIS. STAT. § 175.60(9)(b)2.

¶21 As noted above, the DOJ informed Schinke that it denied his application because he had been convicted of a misdemeanor crime of domestic violence and was disqualified under federal law. Schinke was aware of the crime for which he had been convicted; therefore, there was no need for the DOJ to provide him with a detailed description of the underlying facts of that conviction, which he already knew. The DOJ providing Schinke with the reason for its denial was enough, and nothing requires reversal of the DOJ's decision for a failure "to

11

follow any procedure, or take any action, prescribed under" WIS. STAT. § 175.60. *See* § 175.60(14m)(f)1.

      *By the Court.*—Order affirmed.

      This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.